UNITED STATES *v.* T. E. ASH ET AL.

No. 4601.—Invoices dated Berlin, Germany, February 7, 1930, etc.
Entered at Houston, Tex., February 7, 1930, etc., New York, July 1, 1930.
Entry Nos. 967–H, 700031, etc.

First Division, Appellate Term

(Decided June 14, 1939)

*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellant.

*Ira P. Jones, Jr.*, for the appellees.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; BROWN, J., concurring in the result

McCLELLAND, Presiding Judge: We have here an application for review covering thirty-two appeals to reappraisement from a decision by Judge Cline on torsion balances, field balances, and parts and accessories for each, exported from Germany during the period from January 1930 to October 1933.

In reappraisement 95766–A and twenty-five others here involved it appears that the importer noted on the entry the invoice prices, which were considered by it to be the cost of production of the articles and the proper dutiable value thereof, but that in view of statements made by the acting appraiser, who was also the deputy collector in charge at the time, to the effect that appraisement would be at higher values based upon what he considered were the foreign values thereof, the importer in each case added to the value an amount sufficient to meet the expected advances. Opposite the amount of such addition on each entry the following appears:

Importer adds to meet advance of appraiser under duress—

and attached to each entry is a paper in the following form:

| Invoice Price As Given | Importer Adds to Meet Advance of Appraiser Under Duress | Entered Value Under Duress |
|---|---|---|
| $89.04 | $50.00 | $139.04 |

(The foregoing is a copy of the paper attached to the entry in reappraisement 95766–A, which is typical of the others.)

When the cases were called for trial at the port of Houston, preliminary to the introduction of evidence on the merits of the issue, the Government moved—

to strike from cases number 1 to 26 the alleged duress certificates as being improper and not in conformity with law.

Counsel for the plaintiff, opposing the motion, conceded that the sheets attached to the entry in each case were not duress certificates such as are contemplated by section 503 of the Tariff Act of 1930, but contended that the values used on entry by the importers were so used under duress and coercion.

The basis of the Government's motion lies in its contention that in the absence of entry under the certificate provided for in section 503, *supra*, the so-called duress certificate, the entered value having been the same as the appraised value in each case, the appeals must be dismissed for lack of issue. The theory of the Government is expressed in its brief as follows:

In order to present a proper issue before the Court, so that it has jurisdiction over an appeal to reappraisement, there must be a compliance with the provisions of Section 501, *supra*. That section of the Tariff Act among other things states the alternative conditions under which an appeal will lie, (1) the appraised value must be higher than the entered value, or (2) there was a change in the classification of the merchandise, resulting from the appraiser's determination in value.

Section 501, *supra*, provides:

The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney.

Examination of each of the appeals herein discloses that written notice of appraisement was mailed to the importer in each case advising of an advance in value, and that within due time thereafter these appeals were filed.

Section 501, *supra*, further provides:

Every such appeal shall be transmitted with the entry and accompanying papers by the collector to the United States Customs Court and shall be assigned to one of the judges, who shall, after affording the parties an opportunity to be heard, determine the value of the merchandise.

So far as the acquisition of jurisdiction by this court over the parties and subject matter of the appeals is concerned, therefore, it appears that requirements of the statute were in all respects complied with. The jurisdiction of the court when it has been properly invoked extends only to the determination of the value of the merchandise. It has not jurisdiction, in a reappraisement proceeding, to proceed

further and determine the question of whether or not its finding of value shall become the basis for the collector's assessment of duties.

In her decision below the trial judge said:

The so-called duress certificates have nothing to do with the finding of value in reappraisement cases. *United States* v. *Malhame & Co.*, 24 C. C. P. A. 448, 452, T. D. 48911. Therefore a judge sitting in reappraisement is not authorized to pass upon the validity of such documents. Section 503 (b) of the Tariff Act of 1930 and Section 489 of the Tariff Act of 1922, which permit the filing of such certificates, relate merely to the action of the collector where such certificates are filed. They may be used as a guide by the collector in liquidating after all the other conditions specified in the provision have been completed.

We concur in that statement and find no error in the action of the trial judge in denying the motion to strike the so-called certificates.

Our decision as to the above also disposes of the question raised as to reappraisements 105392–A and 105465–A.

Proceeding, therefore, to a determination of the merits, we find that the issue passed upon by the single judge and now up for review is not new. It first arose in this court in connection with reappraisements 90752–A, etc., *T. E. Ash et al.* v. *United States*, and was decided by a single judge sitting in reappraisement in favor of the plaintiffs' claim that cost of production was the proper basis for determining the dutiable value and that the invoiced values represented such cost of production (Reap. Dec. 1850). On appeal the judgment was reversed by the appellate division (Reap. Dec. 2115) and a new trial was ordered. Another single judge sitting in reappraisement after hearing ordered the appeals dismissed for lack of proof (Reap. Dec. 3119). On appeal to the First Division of this court the decision of the single judge was reversed (Reap. Dec. 3250) and the plaintiffs' contention sustained. That judgment was, on appeal to the Court of Customs and Patent Appeals, reversed and remanded for further proceedings in accordance with the views expressed in the opinion, which is reported at 22 C. C. P. A. 395, T. D. 47401. On the remand the plaintiffs' contention was again sustained by the First Division (Reap. Dec. 3549), and upon appeal to the Court of Customs and Patent Appeals that judgment was affirmed (23 C. C. P. A. 360, T. D. 48211).

All of the cases now before us had been suspended to await the outcome in reappraisements 90752–A, etc., and when the final decision above referred to was rendered these cases were set for trial, at which time the record in the previously decided case was by consent incorporated as part of the record herein and further evidence was offered by plaintiff for the purpose of supplementing the evidence in the incorporated case to cover the period during which the exportations in the cases at bar were made.

The outcome in the incorporated case very largely depended upon the weight to be given to a group affidavit verified by seven different

witnesses in Germany. Strenuous objection was made to the admission of the affidavit at the trial of the case, but both in this court and the Court of Customs and Patent Appeals, before which the admission of the affidavit by the trial court was cited as error, it was held that such objections went to the weight and not the admissibility of the affidavit. In the determination of the issue, however, it is manifest that the affidavit received full weight.

That affidavit, Exhibit 3 in the incorporated case, is now supplemented by another group affidavit signed by six of the affiants in the original affidavit and accompanied under the same cover by the affidavit of the sales manager and chief geophysicist of the exporter to take the place of the seventh affiant in the original affidavit who had since left the employ of the exporter. When the supplemental affidavit was offered in evidence by counsel for the plaintiffs it was objected to on the part of counsel for the Government on the ground of its form and generally on the ground that none of the affiants was competent to make the statements therein contained, some of which, it is contended, are conclusions of law rather than statements of fact.

While the form of the affidavit leaves something to be desired in the matter of determining which of the affiants is responsible for each of the numerous statements made in the affidavit, we are of the opinion that the form is not sufficiently defective to bar the admission of the affidavit. The admission of Exhibit 3 in the incorporated case, which is similar in form to the supplemental affidavit in the case at bar, was held by the Court of Customs and Patent Appeals in *United States* v. *Ash*, 22 C. C. P. A. 395, *supra*, not to be error.

The sources of knowledge of the affiants are fully set forth in the affidavit, Exhibit 3 in the incorporated case. It appears therefrom that the affiants were competent to testify with regard to the production and sales conditions involved in marketing the products of the exporter, and since in the supplemental affidavit offered herein the statements made by the witnesses in the former affidavit are referred to and reaffirmed, we are of the opinion that the objections to the admission of the affidavit herein were properly overruled by the trial court and that no error was committed in respect to the admission of the affidavit as Exhibit 2.

It is established by ample evidence in the record that because of the highly specialized character of the torsion balances, etc., in issue technical help in explaining their use, operation, and maintenance must be furnished by experts employed by the manufacturer, and that for that reason sales in Germany, whether made for home consumption or for export to countries other than the United States were restricted to one class of purchasers, ultimate consumers, and the articles were not freely offered to all purchasers. The record also establishes that

no instruments similar to those in issue were produced or sold in Germany. We therefore find no error on the part of the trial court in determining that at the time of exportation of the involved merchandise there was no foreign value, as that value is defined in section 402 of the Tariff Acts of 1922 and 1930, therefor in Germany.

It is apparently undisputed that no export value as defined in section 402, *supra*, existed on the respective dates of exportation for the merchandise in issue.

The record discloses that the importer, the American Askania Corporation, was the exclusive representative of the manufacturer for the sale of torsion balances, etc., in the United States. It also shows that at or about the time of the exportation of the merchandise here involved no instruments similar thereto made by any other manufacturer, either domestic or foreign, were being sold or offered for sale in the United States. It appears that the instruments here involved were not sold or offered for sale to any class of purchasers in the United States save consumers, i. e., oil companies and geophysicists interested in using them for exploration purposes, for the reason that in each case technical instruction furnished by the importer had to accompany the sale of the machine and subsequent advice and check-up had to be made thereof, all of which were included in the sale price of the machine. Although in one or two cases as many as six instruments were sold to one purchaser, nevertheless the cost of instruction and the advisory service was included in the price, and the machines were not sold at a price which did not include the cost of such instruction and service.

In view of the evidence outlined above we hold that there was no error on the part of the court below in finding that the market in the United States was controlled and that there was therefore no United States value as defined in section 402, *supra*, for the merchandise.

In general, the evidence as to cost of production is contained in the affidavits, Exhibit 3 in the incorporated case and Exhibit 2 in the instant case. Every element entering into cost of production as set out in section 402 (e) of the Tariff Act of 1922 and section 402 (f) of the Tariff Act of 1930 is given in detail therein, and as to each item of merchandise involved the sum of the amounts representing such elements as given in the affidavit equals the invoice value of the item plus the packing charges. Such evidence has not been controverted, and we therefore find no error on the part of the court below in finding and holding that the invoice unit values, plus packing, represented the cost of production of the articles.

For the foregoing reasons the judgment of the court below is in all respects affirmed. Judgment will issue accordingly.

BROWN, Judge: I concur in the result.