MUTUAL SUPPLY CO. (H. H. MACDONAUGH & CO.) *v.* UNITED STATES

**No. 6559.—**Invoice dated Osaka, Japan, May 9, 1940.
Certified May 10, 1940.
Entered at Los Angeles, Calif., June 6, 1940.
Entry No. 9413.

(Decided December 2, 1946)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*James F. Donnelly* and *Daniel I. Auster,* special attorneys), for the defendant.
*Lamb & Lerch* (*David A. Golden* of counsel), amici curiae.

KEEFE, Judge: This is an appeal for a reappraisement of certain rubber-soled canvas-top shoes, exported from Japan on May 14, 1940. The shoes in sizes of 4, 4½, and 5 were invoiced at yen 13.92 per dozen pairs, packed; in sizes of 5 and 6 at yen 14.28 per dozen pairs, packed; and in size 7 at yen 14.40 per dozen pairs, packed. The shoes were entered under duress to meet advances of the appraiser in similar cases at American selling price values of $1.22 per pair, less 3 per centum for sizes up to and including size 5, and at $1.32 per pair, less 3 per centum for the larger sizes, including size 7. The shoes were appraised as entered.

The appraiser, on behalf of the plaintiff, testified that the basis of appraisement was derived from sales made by the United States Rubber Co. of rubber-soled canvas-top shoes known as MK 659 in men's sizes and BK 659 in boys' sizes; that the appraised values represent the prices at which such domestic articles were freely offered for sale.

for home consumption to all purchasers in the principal market of the United States, in the usual wholesale quantities, and in the ordinary course of trade; and that he found such appraised values to be the prices that the manufacturer, producer, or owner would have received, or was willing to receive, for such merchandise in the ordinary course of trade, when sold for home consumption in the usual wholesale quantities, at the time of exportation of the imported merchandise. His investigation further disclosed that the principal market for such class of rubber-soled canvas-top shoes was San Francisco, and that such shoes were freely offered for sale to all purchasers in the United States.

Charles W. Pennington, the Pacific coast sales manager of the footwear and clothing division of the United States Rubber Co., testified on behalf of the plaintiff that the domestic shoes, used as a basis of value, were first manufactured in 1935 particularly to meet the competition of such Japanese shoes as are the subject of controversy here; that his company's product was like or similar to the shoes in question; that the domestic shoes were sold principally on the west coast from Bakersfield, Calif., north, and south to the Mexican border, in the State of Arizona, and in part of Nevada; that the principal market for such shoes was San Francisco; that purchasers of such shoes were not restricted as to the disposal thereof; that they were sold to retailers and not to jobbers except in one instance; that the United States Rubber Co. had a standard sales price for their merchandise throughout the United States, and that the prices for MK and BK 659 shoes were $1.32 and $1.22 per pair, less 3 per centum cash discount, respectively; and that when sales were made to jobbers a higher discount was granted. The witness further testified that offers were made throughout the United States first through meetings of district managers where the entire group of the company's products is shown, and then the managers have meetings with their salesmen, samples being furnished and all the details and descriptions of the products passed along; that a product sold by the company is not printed in the company's catalog until it is accepted throughout the country; that the shoes in question were not in the printed catalog but nevertheless were offered for sale freely throughout the United States; that the company has no reason to restrict the sale of any particular article to any locality; that the company has a standard price for the sale of their merchandise throughout the United States; and that the prices for MK and BK 659 shoes represent such standard price.

George B. Parks, examiner at the port of Los Angeles, also testified on behalf of the plaintiff as to the basis of appraisal. Herbert S. McWhorter, the San Francisco district manager of the United States Rubber Co., testified on behalf of the plaintiff as to the identity and

similarity of shoes manufactured by the United States Rubber Co. and the imported shoes.

The plaintiff contends that the United States Rubber Co. did not freely offer the MK 659 and BK 659 shoes to all purchasers in the principal market of the United States, as required by section 402 (g), Tariff Act of 1930. It is further contended that MK 659 and BK 659 shoes cannot be used as the basis of appraisement under section 402 (g) because such shoes had not been manufactured on or before February 1, 1933, the date of issue of the Presidential proclamation (T. D. 46158). Therefore, the cost of production of such shoes was not investigated by the Tariff Commission under the provisions of section 336. In that connection plaintiff points out that section 402 (g) in itself does not direct that imported merchandise shall be appraised at the American selling price of like or similar articles, as said section merely defines what elements constitute an American selling price; and that in order to appraise on the basis of "like or similar" domestic products, such products must have been investigated by the United States Tariff Commission. Although plaintiff admits that a value other than the appraised value was not affirmatively established, it is contended that the invoice values for the various imported shoes, which represents the purchase price, should be used as the value of the merchandise in the absence of other evidence because the appraiser noted on the invoice that the foreign market value is not higher than the purchase price.

The Government contends that the United States Rubber Co. freely offered rubber-soled canvas-top shoes, numbered MK 659 and BK 659, to all purchasers in the principal market of the United States at San Francisco, as required by section 402 (g); and that as all of the witnesses herein testified on behalf of the plaintiff, the importer has failed to meet its burden, if the proof is found deficient, as to whether or not the domestic shoes were freely offered for sale.

Counsel for the American manufacturers of like or similar shoes were granted the privilege of filing brief as *amici curiae*. Counsel therein contend that the only basis for determining the correct value of the imported merchandise is the American selling price of a like or similar article; that a like or similar American article was freely offered for sale to all purchasers in the usual wholesale quantities in the principal market at the appraised values; and that the plaintiff has failed to overcome the presumption of correctness attaching to the appraiser's action.

I am of the opinion that the testimony fully establishes that the domestic article which was like or similar to the imported article, was freely offered for sale for home consumption to all purchasers in the principal market of the United States. The evidence discloses that the usual wholesale quantity is one case; that the greater number of wholesale customers were retail merchants, there being only one

jobber purchasing such merchandise; and that jobbers receive a larger discount than usually granted to other wholesale purchasers. Clearly then, all wholesale purchasers were able to buy such shoes in the usual wholesale quantities and in the ordinary course of trade at the wholesale price paid by retail concerns. Sales to jobbers would not constitute sales in the ordinary course of trade because of the higher discount. The evidence further establishes that although these particular shoes were made specially for the market on the west coast, district sales managers throughout the country were familiar with the article and knew that it was for sale at the standard price. Upon such evidence, I am of the opinion that the prices in question are fully established as also representing the prices at which the manufacturer, producer, or owner would have received or was willing to receive for the competitive domestic shoes if sold for consumption throughout the United States.

Respecting the plaintiff's contention that the Presidential proclamation was not directed against the shoes here in question because the like or similar domestic shoes had not been manufactured at the time of the proclamation, I am of the opinion that the Presidential proclamation was directed against an entire class of shoe rather than any one particular shoe. In that regard the proclamation reads:

Whereas under and by virtue of section 336 of Title III, Part II, of the act of Congress approved June 17, 1930 (46 Stat. 590, 701), entitled "An Act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes," the United States Tariff Commission has investigated the differences in costs of production of, and all other facts and conditions enumerated in said section with respect to, boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon, or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, and boots and shoes or other footwear, wholly or in chief value of india rubber, not specially provided for, being wholly or in part the growth or product of the United States, and of and with respect to like or similar articles wholly or in part the growth or product of the principal competing countries;

\* \* \* \* \* \* \*

The proclamation discloses that the Tariff Commission found that the principal competing countries for the articles under investigation were Czechoslovakia and Japan and that the duties expressly fixed by statute upon such shoes do not equalize the differences in the costs of production of the domestic articles when produced in said principal competing countries. The proclamation is not limited to any particular period in which the duties do not equalize the differences in the costs of production of the domestic articles, nor to any particularly specified articles in the class of shoes under investigation. It is my opinion that the proclamation intended to include every article coming within the class of goods investigated and to continue

to include articles in such class as long as the duties fixed by statute failed to equalize the differences in the costs of production of the domestic articles. It must be borne in mind in this connection that the American tariff acts are enacted for purposes other than that of providing revenue. The Tariff Act of 1930, known as Public Law No. 361, is stated to be—

An Act To provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes.

I am further of the opinion that it was the intention of Congress in enacting section 336 to enable manufacturers in the United States, when it was found that foreign competition was preventing the sale of its merchandise, to manufacture an article designed especially to meet that competition so that the duty upon the particular foreign article could be regulated in order that the American industry could compete with goods produced by manufacturers in the countries which the Tariff Commission had named as being the chief competing countries.

In the situation here we have certain shoes imported from Japan in the year 1940. The Tariff Commission had made an investigation concerning the class of shoes into which the imported shoes fell prior to the year 1935, and the President issued a proclamation declaring that such class of shoes from Japan shall be assessed for duty upon the basis of the American selling price of a like or similar domestic shoe. At the time of importation of the Japanese shoes it is not denied that there was a like or similar domestic shoe, and duty was assessed upon the basis of the American selling price of such shoes. I am of the opinion that the appraised values of the merchandise herein, which represent the American selling prices of like or similar domestic articles, are the proper values of the imported articles for tariff purposes.

Judgment will therefore be entered in favor of the Government affirming the values found by the appraiser.