MUTUAL SUPPLY CO. (H. H. MACDONAUGH & Co.) *v.* UNITED STATES

No. 7701.—Invoice dated Osaka, Japan, May 9, 1940.
Certified May 10, 1940.
Entered at Los Angeles, Calif., June 6, 1940.
Entry No. 9413.

First Division, Appellate Term

(Decided May 11, 1949)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the appellant.
*David N. Edelstein,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the appellee.
*Lamb & Lerch* (*David A. Golden* of counsel), *amici curiae.*

Before OLIVER, COLE, and MOLLISON, Judges; MOLLISON, J., Concurring

OLIVER, Chief Judge: This is an appeal from a decision of Judge Keefe sitting in reappraisement which involves the valuation of certain rubber-soled, canvas-top shoes exported from Japan on May 14, 1940, and entered at the port of Los Angeles, Calif., on June 6, 1940.

The invoice values claimed by the importer to be the export values are yen 13.92 per dozen pairs, packed, for sizes 4, 4½, and 5; yen 14.28 per dozen pairs, packed, for sizes 5 and 6; and yen 14.40 per dozen pairs, packed, for size 7. The shoes were entered because of advances by the appraiser in similar cases at American selling price values of $1.22 per pair, less 3 per centum for sizes up to and including size 5, and at $1.32 per pair, less 3 per centum for the larger sizes, including size 7. The merchandise was appraised on the basis of the American selling price (section 402 (g)), Tariff Act of 1930, as amended, in accordance with the provisions of a Presidential proclamation dated February 1, 1933 (63 Treas. Dec. 232, T. D. 46158), issued under and by virtue of the authority of section 336 of the Tariff Act of 1930.

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

Whereas under and by virtue of section 336 of Title III, Part II, of the act of Congress approved June 17, 1930 (46 Stat. 590, 701), entitled "An Act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes," the United States Tariff Commission has investigated the differences in costs of production of, and all other facts and conditions enumerated in said section with respect to, boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon, or other synthetic textile, silk, or substitutes for any of the foregoing with soles composed wholly or in chief value of india rubber or substitutes for rubber, and boots and shoes or other footwear, wholly or in chief value of india rubber, not specially provided for, being wholly or in part the growth or product of the United States, and of and with respect to like or similar articles wholly or in part the growth or product of the principal competing countries;

Whereas in the course of said investigation a hearing was held, of which reasonable public notice was given and at which parties interested were given reasonable opportunity to be present, to produce evidence, and to be heard;

Whereas the commission has reported to the President the results of said investigation and its findings with respect to such differences in costs of production;

Whereas the commission has found it shown by said investigation that the principal competing countries for boots, shoes, or other footwear (including athletic

or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon, or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, provided for in paragraph 1530 (e) of Title I of said tariff act, are Czechoslovakia and Japan, and that the principal competing country for boots, shoes, or other footwear, wholly or in chief value of india rubber, provided for in paragraph 1537 (b) of Title I of said act, is Czechoslovakia, and that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic articles and the like or similar foreign articles when produced in said principal competing countries; and that said differences can not be equalized by proceeding under the provisions of subdivision (a) of said section and act;

Whereas the commission has specified in its report the ad valorem rates of duty based upon the American selling price, as defined in section 402 (g) of said act, of the domestic articles found by the commission to be shown by said investigation to be necessary to equalize such differences; and

Whereas in the judgment of the President such ad valorem rates of duty based upon said American selling price are shown by such investigation of the Tariff Commission to be necessary to equalize such differences in costs of production:

Now, therefore, I, Herbert Hoover, President of the United States of America, do hereby approve said report and proclaim that the rate of duty shown by said investigation to be necessary to equalize such differences, within the limit provided in said section 336, on boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, is 35 per centum ad valorem based upon the American selling price as defined in section 402 (g) of said act of boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, manufactured or produced in the United States; and that the rate of duty shown by said investigation to be necessary to equalize such differences, within the limit provided in said section 336, on boots, shoes, or other footwear, wholly or in chief value of india rubber, not specially provided for, is 25 per centum ad valorem based upon the American selling price of boots, shoes, or other footwear, wholly or in chief value of india rubber, not specially provided for, manufactured or produced in the United States.

In witness whereof I have hereunto set my hand and caused the seal of the United States to be affixed.

Done at the city of Washington this 1'' day of February, in the year of our Lord nineteen hundred and thirty-three, and of the Independence of the United States of America the one hundred and fifty-seventh.

[SEAL.]                                                HERBERT HOOVER.
By the President:
    HENRY L. STIMSON,
        Secretary of State.

[No. 2027]

The shoes in question were appraised on the basis of the selling prices of domestic canvas-top, rubber-soled shoes manufactured by the United States Rubber Co. (exhibit 3), and designated as MK

659 for men's sizes and BK 659 for boys' sizes (R. 6, 9, 88). The lower court determined the values to be the values found by the appraiser (*Mutual Supply Co. (H. H. MacDonaugh & Co.)* v. *United States* (17 Cust. Ct. 442, Reap. Dec. 6559)).

Appellant contends that the decision of the single judge is not supported by the record, claiming that the domestic shoes were not freely offered for sale to *all* purchasers and also that the appraised values do not represent the prices the manufacturer "would have received or was willing to receive" for the shoes if sold for domestic consumption (section 402 (g), *supra*.) The appellant further contends that sales of these domestic shoes, or a willingness to sell such shoes, are immaterial and their selling prices cannot be used as a basis for valuation because their cost of production was not investigated by the United States Tariff Commission inasmuch as the domestic shoes in evidence were not in existence at the time the Tariff Commission made its investigation. These shoes (MK 659 and BK 659) were not manufactured until February 1, 1935, a date subsequent to the time of the investigation by the Tariff Commission and the date of the Presidential proclamation. They were, however, in existence on the date of exportation of the imported merchandise.

The Government contends, on the other hand, that the selling prices of the MK 659 and BK 659 shoes were a proper basis for appraisement even though manufactured after the date of the Presidential proclamation (T. D. 46158) and that every domestic shoe need not be investigated by the Tariff Commission in order to validate the Presidential proclamation, and further, that the domestic shoes were freely offered for sale to all purchasers at the time of exportation at the appraised values.

The Pacific Coast sales manager of the footwear and clothing division of the domestic manufacturer testified that the MK 659 and BK 659 shoes were manufactured for the first time in 1935 and were designed to meet the competition of such Japanese shoes as are here involved. He stated that exhibit 3 (MK 659) was described on the invoices (plaintiff's collective exhibit 2) covering sales by the United States Rubber Co. in the San Francisco district during 1940 (R. 19). He further testified that the domestic shoes were sold principally in the San Francisco district, which was comprised of portions of California and Nevada. He stated that the company had branches in various cities of the United States which sold to retailers at a standard price but not to jobbers, except in one instance at an unnamed but admittedly greater discount than that at which sold to retailers, and while it was the policy of the company to sell to retailers, his company did not refuse to sell to jobbers. The witness advanced as a reason for not selling to jobbers that it was probably due to poor salesmanship on the part of the company. He further testified that these

products were offered for sale throughout the United States and that his company placed no restriction on its customers as to use or the prices at which they could resell (R. 92.)

In support of the contention that the sales of the domestic shoes by the United States Rubber Co. were confined to retailers to the exclusion of any other trade, and hence that such sales did not properly represent the price to all purchasers, appellant in its brief directs attention to *United States* v. *Robinson,* 19 C. C. P. A. 274, T. D. 45436. With respect to the effect of limiting sales to one class of purchasers only, the court there stated:

\* \* \* It may be, as is contended by the importer, that it is the "ordinary course of trade" between the manufacturer and the wholesaler to restrict the sales to wholesalers, but this is not the ordinary course of trade to which the statute refers. It must be remembered that the statute provides for "the ordinary course of trade" in which such or similar goods are "freely offered for sale to all purchasers" in the usual wholesale quantities. Since in the sales by the manufacturers the goods were not offered to all purchasers, the sales price should not be accepted as the proper foreign value. \* .\* \*

The facts in this case are distinguishable from the facts in the above-cited case. There, the sales were *restricted* to wholesalers, whereas in the case at bar, while the ordinary course of trade established by the seller of the domestic shoes was to sell to retailers, the shoes were freely offered to *all* purchasers. The witness, Pennington, who was thoroughly familiar with the sales policy of the United States Rubber Co., testified that the domestic shoes were sold to retailers and one jobber but that "everything that we manufacture is offered to every purchaser in the United States" (R. 93). The fact that the domestic sales herein were made mainly to retailers is not authority for holding that sales or offers for sale were restricted to retailers. *United States* v. *Malhame & Co.,* 19 C. C. P. A. 164, T. D. 45276; *M. J. Corbett & Co. (Inc.)* v. *United States,* 20 C. C. P. A. 178, T. D. 45965; *United States* v. *F. C. Gerlach & Co. et al.,* 7 Cust. Ct. 494, Reap. Dec. 5443; *United States* v. *Nicholas Gal et al.,* 15 Cust. Ct. 395, Reap. Dec. 6192. The cases of *United States* v. *Ash,* 23 C. C. P. A. 360, T. D. 48211, and *United States* v. *Ash,* 2 Cust. Ct. 1016, Reap. Dec. 4601, cited by the appellant in its brief, are not in point in determining the present issue. In those cases it was also shown that sales were restricted to one class of purchasers, to wit, individual consumers.

With respect to the contention that the cost of production of the MK 659 and BK 659 shoes was not investigated by the Tariff Commission, appellant points out in its brief that section 402 (g), in itself, does not direct that imported merchandise shall be appraised at the American selling price of a like or similar domestic article but that reference must be had to section 336 for authority to appraise upon

the basis of a like or similar article. With this contention we are in accord since said section merely defines those elements which constitute an American selling price; but appellant claims that in order to appraise on the basis of "like or similar" domestic products, such products must have been investigated by the United States Tariff Commission.

The Tariff Commission investigated the cost of production of American rubber-soled, canvas-top shoes—not certain styles, specific brands, or particular shoes. They investigated a general class or type of shoe, including, among others, those with rubber soles and canvas tops. Likewise, it was the cost of production of a "class or kind" of shoe as a whole, in the principal competing countries, that was found to be unequal to the domestic cost of production. It was as to such class that the Presidential proclamation herein was issued. Whether or not there was a particular brand or style of shoe in existence is immaterial so long as the shoe comes within the class or kind covered by the investigation and falls within the description given in the proclamation. (*United States* v. *General Dyestuff Corp.*, 19 C. C. P. A. (Customs) 410, T. D. 45577.)

We find no merit in appellant's contention that because the particular domestic shoe was not in existence at the time the Tariff Commission investigated the subject and made its report that the American selling price is inapplicable in this case. The very fact that the Presidential proclamation refers to a class of shoes, rather than to specific trade numbers or styles, would seem to indicate an intent to cover within the proclamation all shoes coming within the description given. (*Union Fork & Hoe Co.* v. *United States*, 24 C. C. P. A. 199, T. D. 48656.) Once it has been established that the imported merchandise is embraced within the proclamation, appraisement must be made upon the basis of the American selling price (section 402 (g)), and this court has no authority to review the proclamation of the President made under the authority of section 336 of the Tariff Act of 1930 or the report of the Tariff Commission on which it was based. *United States* v. *George S. Bush & Co., Inc.*, 310 U. S. 371, T. D. 50159.

The latest expression from our appellate court is contained in the majority opinion in *T. M. Duche & Sons, Inc.* v. *United States*, 36 C. C. P. A. 19, C. A. D. 391, decided November 2, 1948, involving an importation of dried egg albumen. In that case appellant contended that the investigation of the Tariff Commission had not complied with the jurisdictional requirements of section 336 and therefore the Presidential proclamation based upon such report was illegal and void. It supported that contention by asserting that there was no domestic article like or similar to the foreign article, as to which the rate of duty was increased by the proclamation. It was there argued by coun-

sel for the appellee that the Presidential proclamation and the report of the Tariff Commission might be judicially reviewed in order to ascertain whether or not those documents disclosed that the investigation was conducted and the proclamation issued in accordance with law. It was not denied by appellant therein that, during the representative period taken by the Commission there was such an article as dried egg albumen produced in the United States. Its contention was that such domestic article was not shown to be in commercial production and that it was necessary under section 336 to find that an industry existed wherein such domestic article was commercially produced. The court said:

> We are of opinion that a fair reading of section 336 does not necessarily presuppose the existence of a competitive domestic industry in order to lend validity to an investigation by the Tariff Commission.
>
> \*       \*       \*       \*       \*       \*       \*
>
> No legal rights were affected by either the findings of the commission or by the proclamation of the President for the reason that "No one has a legal right to the maintenance of an existing rate or duty." *Norwegian Nitrogen Products Co. v. United States* [288 U. S. 294], *supra*. While the decision in that case involved the provisions of section 315 of the Tariff Act of 1922, by which the President was not limited to a consideration of the evidence obtained by the commission, we think that what was said there that "Neither the action of Congress in fixing a new tariff nor that of the President in exercising his delegated power is *subject to impeachment if the prescribed forms of legislation have been regularly observed.*", applies to the present controversy. [Italics quoted.]

We find the following facts, based on the evidence adduced herein:

1. That the imported merchandise consists of rubber-soled canvas-top shoes exported from Japan on May 14, 1940.

2. That the imported merchandise is embraced within the description contained in the Presidential proclamation (T. D. 46158).

3. The merchandise used as a basis for the appraised values consists of rubber-soled canvas-top shoes identified as MK 659 and BK 659 manufactured domestically by the United States Rubber Co.

4. That the MK 659 and BK 659 shoes are embraced within the description contained in the Presidential proclamation (T. D. 46158).

5. That the MK 659 and BK 659 shoes were freely offered for sale to all purchasers in the principal markets of the United States at the time of exportation of the imported shoes at the appraised values.

We therefore conclude as a matter of law that the proper basis of appraisement for the merchandise in question is American selling price, as defined in section 402 (g), Tariff Act of 1930, and that such American selling prices are the appraised values.

Accordingly, the judgment of the court below is affirmed.

Judgment will be rendered accordingly.

CONCURRING OPINION

Mollison, Judge: I concur in the result and in the conclusion of my colleagues that the essential prerequisites to the validity of the President's finding and proclamation seem to have been complied with and that the imported merchandise is embraced within the Presidential proclamation and that the appraisement must be made upon the basis of the American selling price (section 402 (g), Tariff Act of 1930, Title 19 U. S. C. § 1402 (g)). However, I disagree with the conclusion that "this court has no authority to review the proclamation of the President made under the authority of section 336 of the Tariff Act of 1930 or the report of the Tariff Commission on which it was based." I do not find anything in the case of *United States* v. *George S. Bush & Co., Inc.*, 310 U. S. 371, T. D. 50159, cited by my colleagues, which supports a conclusion in that form. In that case our Supreme Court merely held that section 501 of the Tariff Act of 1930 does not permit judicial examination of the *judgment* of the President that the rates of duty recommended by the Commission are necessary to equalize the differences in domestic and foreign costs of production, and does not permit scrutiny of the President's *method of solving the problem* in respect to the equalization of differences in domestic and foreign costs of production.

The Supreme Court concluded in the cited case that the President had acted in full conformity with the statute, and that no question of law was raised since the statute constituted the President the sole and exclusive judge of the existence of those facts in respect to which a discretionary power had been granted. But the proclamation is not conclusive, and the question of whether the President has proceeded in conformity with the law in proclaiming changes in customs duties is a justiciable one, which may be adjudicated in the proper forum, and it is subject to protest. *Carl Zeiss, Inc.* v. *United States*, 23 C. C. P. A. 7, T. D. 47654.

If the prescribed forms of legislation have not been regularly observed in connection with the exercise of the delegated power by the President, the proclamation and its validity are subject to judicial review in the proper forum and this is plainly stated by the Supreme Court at page 318 of its opinion in *Norwegian Nitrogen Products Co.* v. *United States*, 288 U. S. 294 (which statement is contained in the quotation in the majority opinion from the cited case of *T. M. Duche & Sons, Inc.* v. *United States*, 36 C. C. P. A. 19, C. A. D. 391). Moreover, the right of judicial review of the proclamation in the proper forum if the President did not act in conformity with the statute is stated in implicit fashion in *United States* v. *Bush & Co., supra*.