(Reap. Dec. 8587)

HOYT, SHEPSTON & SCIARONI *v.* UNITED STATES

Entry No. 4881.

(Decided May 24, 1956)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Mollie Strum* and *Samuel D. Spector*, trial attorneys), for the defendant.

WILSON, Judge: This appeal for reappraisement involves the proper value of certain canned clams, exported from Japan on June 18, 1952, and entered at the port of San Francisco.

The following stipulation was entered into between counsel for the respective parties:

\* \* \* That the merchandise involved herein consists of clams packed in airtight containers, cans, weighing with their contents 10 ounces each; said clams being a product of Japan, being packed in Japan, and being commonly known in the United States as baby clams.

2. In accordance with the proclamation of the President dated May 1, 1934, T. D. 47031, said merchandise was appraised upon the basis of the American Selling Price, Section 402 (g), Tariff Act of 1930, of a clam commonly known as a soft shell clam, the product of New England, and which was packed in Portland, Maine, in airtight containers, the cans weighing with their contents 10 ounces each; said American selling price being $20 for four dozen cans.

3. On the date of exportation there were several types of canned clams other than the soft clam of New England, as referred to in paragraph 2, which were packed and offered for sale in the United States, and that among these being baby clams packed in California in airtight containers, cans, weighing with their contents 10 ounces each, and having a value as defined in Section 402 (g), of $12.75 for four dozen cans, these being a product of Japan, having been previously imported into the United States in bulk and in a frozen condition, and thereafter packed as is described above.

Further, that these baby clams were identical with the imported clams referred to in paragraph 1, *supra*.

4. If the court concludes that the New England soft clam referred to in paragraph 2 was properly used as a basis of appraisement, the dutiable value is the appraised value, and if the court concludes that the baby clam referred to in paragraph 3 is the proper basis for appraisement, the dutiable value is $12.75 for four dozen cans.

The examiner of the merchandise here under consideration testified that the article used as a basis for the American selling price of the imported merchandise was the "B & M soft clam," packed by Burnham and Morrill, "Number 1" can, "10½ ounce size," and that the principal market for the sale of the B & M clam was Portland, Maine (R. 3-4).

Plaintiff introduced in evidence two samples as representative of the merchandise imported (plaintiff's exhibit 1 (R. 4) and plaintiff's exhibit 1-A (R. 9)). There was also received in evidence a sample of the so-called New England soft clam packed in Portland, Maine, which was used as the basis of appraisal (plaintiff's exhibit 2 (R. 10)).

Plaintiff, in this case, concedes that the correct basis for determining the value of the imported merchandise is the American selling price (section 402 (g), Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938), pursuant to a Presidential proclamation (T. D. 47031). It contends, however, that such American selling price should be based upon the value of baby clams "packed in California in airtight containers, cans, weighing with their contents 10 ounces each, and having a value as defined in section 402 (g), of $12.75 for four dozen cans, these being a product of Japan, having been previously imported into the United States in bulk and in a frozen condition, and thereafter packed as is described above." (R. 8.)

The relevant portions of the statutes in question are as follows:

SEC. 336.   EQUALIZATION OF COSTS OF PRODUCTION.

(a)   CHANGE OF CLASSIFICATION OR DUTIES.—In order to put into force and effect the policy of Congress by this Act intended, the commission * * * shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article * * *.   If the commission finds it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences. * * *

(b)   CHANGE TO AMERICAN SELLING PRICE.—If the commission finds upon any such investigation that such differences can not be equalized by proceeding as hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price (as defined in section 402 (g)) of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences. * * *

*         *         *         *         *         *         *

(h)   DEFINITIONS.—For the purpose of this section—
(1)   The term "domestic article" means an article wholly or in part the growth or product of the United States; and the term "foreign article" means an article wholly or in part the growth or product of a foreign country.

Section 402 (g) of the Tariff Act of 1930, as amended, *supra*, provides:

AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

Counsel for the plaintiff, in their brief, state the issue of law to be as follows:

First:   May the "domestic article," that is, the "domestic" clam affected by the President's proclamation, be comprised of clams originating in Japan and identical with the imported canned clams but packed in this country?

Second:   If so, does the American value of this clam, control the appraisement of the canned clams now involved?

The tariff provision to which the American selling price is applicable is paragraph 721 (b), which imposes a duty of 35 per centum on canned clams.   Counsel for the plaintiff, in their brief, maintain that it was the domestic canning industry which was given the protection of the 35 per centum rate of duty and that Congress was concerned not with

the origin of the raw material, but with its processing; that the history of the pertinent statutes and the information available to Congress, as disclosed in the Summary of Tariff Information, 1929, page 2567, indicates that Congress was fully aware of the fact and intended that bulk clams would be imported free of duty for use as raw material by the domestic canning industry in the production of a "domestic" product, and argue that, accordingly, it was this industry to which was given the protection of the aforesaid rate of duty. Counsel further point out, in their brief, that the purpose of the flexible tariff act, section 336, is to "equalize the differences in the costs of production." Plaintiff then contends that no amount of "flexing" of rates of duty can equalize differences in costs of production of articles which are on the free list and that the status of raw clams, which are on the free list, is not and cannot be affected by the provisions of section 336, *supra*.

In support of its position, counsel for the importer, in their brief, contend that the clams imported from Japan and packed in the United States are "domestic articles," within the meaning of section 336 (h) of the Tariff Act of 1930, and that, accordingly, appraisement of the imported clams should be based upon the American selling price of the baby clams imported from Japan, frozen in bulk, and packed in the United States. On the other hand, counsel for the defendant maintains that the clams imported from Japan, frozen in bulk, and then packed in the United States are "foreign articles," also citing as authority section 336 (h), *supra*.

Section 336 of the Tariff Act of 1930 has to do with the equalization of costs of production of any domestic article and of any like or similar foreign article. It provides the procedures for determining such increases or decreases in rates of duty found necessary to equalize the differences in the costs of production of any domestic articles and any like or similar article, or for a change to American selling price valuation (as defined in section 402 (g) of the Tariff Act of 1930), at such ad valorem rates of duty deemed necessary, based upon the American selling price, in a case where it is found that differences in the costs of production cannot be equalized by a change of classification or rate of duty.

Subdivision (h) of the aforesaid section 336 gives statutory definitions of the terms "domestic article" and "foreign article" for "the purpose of this section." We have no right, however, to inject the statutory definitions given in section 336 (h), *supra*, for "domestic article" and "foreign article" into the provisions of section 402 (g) of the Tariff Act of 1930, the American selling price formula, where such terms do not appear. The definitions above referred to have no application herein.

The consideration of section 336 of the tariff act, *supra*, is a function of the Tariff Commission. It must be presumed that the Tariff Commission performed its statutory duty and investigated the differences in costs of production of domestic canned clams and of any like or similar foreign merchandise and made its report, as a result of which assessment of a rate of duty at 35 per centum ad valorem under the applicable paragraph of the act, based upon the American selling price, was proclaimed by Presidential proclamation (T. D. 47031).

It has been held, in effect, that the courts have no authority to review a proclamation of the President made under the authority of section 336 (c) of the Tariff Act of 1930 or the report of the Tariff Commission on which it is based. *United States* v. *George S. Bush & Co., Inc.*, 310 U. S. 371, T. D. 50159. Further, once it has been established that imported merchandise is embraced within such a Presidential proclamation, appraisement must be made upon the basis of the American selling price (section 402 (g), *supra*. *Mutual Supply Co. (H. H. MacDonaugh & Co.)* v. *United States*, 22 Cust. Ct. 446, Reap. Dec. 7701 (which cited the *Bush* case, *supra*), affirmed in *H. H. MacDonaugh & Co., The Mutual Supply Co.* v. *United States*, 38 C. C. P. A. (Customs) 36, C. A. D. 436. In the present case, the validity of the President's proclamation has not been questioned, nor has there been any challenge made by the plaintiff herein respecting the action of the Tariff Commission.

The objection here is as to the appraisement of the merchandise made by the appraiser. The appraiser is not concerned with the question of the differences in costs of production of any domestic article and any like or similar foreign article. The statute imposes that obligation upon the Tariff Commission. The appraiser is obliged to comply with the mandate of the Presidential proclamation.

The statute controlling the situation in the case at bar is section 402 (g) of the Tariff Act of 1930, as amended, *supra*. Said section does not mention or refer to the terms "domestic article" and "foreign article." These terms appear in section 336 (h), *supra*. Section 402 (g), *supra*, does refer to the American selling price of any article "manufactured or produced in the United States." So that the question here is the cost of production of an article "manufactured or produced in the United States," within the American selling price definition, to be used as the basis of appraisement of the merchandise here imported.

The language "manufactured or produced in the United States" was construed by our appellate court in *United States* v. *Samuel Dunkel & Co., Inc.*, 33 C. C. P. A. (Customs) 60, C. A. D. 317. in connection with the drawback provisions of section 313 (a) of the Tariff Act of 1930, reading as follows:

## SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, * * *.

The question for determination in the *Dunkel* case, *supra*, was whether a refund of 99 per centum of the duties paid on butter, imported from Argentina in 56-pound boxes, packed by appellee in 1-pound tins in the United States and exported under customs supervision should be made to appellee, by reason of the aforesaid drawback provisions. The appellate court therein held that the butter so exported in 1-pound tins was not manufactured or produced in the United States, within the purview of section 313, *supra*, and, accordingly, was not entitled to the refund claimed. In so holding, the court observed that "the article imported was butter, and the article exported was the same butter. It had merely been altered in form."

Accordingly, I am of opinion that the clams imported from Japan, frozen in bulk, and then packed in airtight containers in the United States were not "manufactured or produced in the United States" (section 402 (g), *supra*).

There is no question but that the appraiser used as the basis of appraisement of the imported canned clams, in accordance with the American selling price formula, merchandise which was "manufactured or produced in the United States."

The court considers the question of law presented by the stipulated facts herein as somewhat different from that stated by counsel for the respective parties. Accordingly, this decision is not to be considered as authority for the proposition as to which one of two or more articles, "manufactured or produced in the United States," should be selected as the basis of the American selling price under section 402 (g), *supra*. Such question must await a case properly presenting such facts, and no opinion is intended to be expressed thereon.

This case is concerned with a consideration of whether either or both of two particularly identified articles are "manufactured or produced in the United States." Having concluded that one article is and the other is not "manufactured or produced in the United States," the stipulated facts, applied to such finding, are conclusive of the issue.

I, therefore, find American selling price, as such value is defined in section 402 (g) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938, to be the proper basis for determining the value of the involved merchandise, and that such value was the value returned by the appraiser.

Judgment will be entered accordingly.