## UNITED STATES *v.* GEORGE S. BUSH & CO., INC.

No. 613. Argued April 23, 24, 1940.—Decided May 20, 1940.

372

*Mr. Warner W. Gardner* argued the cause, and *Solicitor General Biddle, Assistant Attorney General Oliver, Messrs. Charles D. Lawrence, Richard H. Demuth, John R. Benney,* and *Edwin G. Martin* were on the brief, for the United States.

*Mr. George R. Tuttle* for respondent.

374

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The Court of Customs and Patent Appeals held invalid the Proclamation made by the President of the United States on May 1, 1934, increasing the duty on canned clams imported from Japan.  104 F. 2d 368.  We granted certiorari because of the importance of that deci-

sion to the administration of the flexible tariff provisions of the Tariff Act of 1930 (46 Stat. 590).

In compliance with § 336 (a) of that Act, the Tariff Commission, in response to an application for an increased duty on canned clams, instituted an investigation in June 1932, gave public notice of the hearing, held the hearing in October 1932 and gave interested parties an opportunity to be present, to produce evidence, and to be heard. As a result of that investigation the Commission found that the statutory duty of 35% *ad valorem* on the foreign dutiable value [1] did not equalize the difference in the costs of production of the domestic article and the Japanese article. On such a finding the Commission was authorized by § 336 (a) to recommend to the President an increase or decrease in the statutory rate but not in excess of 50 per cent; or in case the differences could not be equalized in that manner, it was empowered by § 336 (b) to specify such *ad valorem* rate of duty based upon the American selling price [2] of the domestic article as it found necessary to equalize such differences. In the latter event, however, the statutory rate could not be increased. The Commission found that the rate of duty on foreign value which would be necessary to equalize the difference in costs exceeded the then existing statutory rate by more than 50 per cent. Accordingly it proceeded under § 336 (b) to specify an *ad valorem* rate based on American selling price, and recommended to the President an increase in the duty, to be effected by assessing the rate of 35 per cent *ad valorem* on the American selling price.

It is provided in § 336 (c) that the President "shall by proclamation approve the rates of duty and changes in classification and in basis of value specified in any report of the commission under this section, if in his judgment

---

[1] § 1, Sch. 7, Par. 721 (b).

[2] As defined in § 402 (g).

such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences in costs of production." The Proclamation referred to the report and findings of the Commission and concluded that the change in duty recommended was "in the judgment of the President" necessary for that purpose. After the President issued his Proclamation, respondent imported some canned clams and they were appraised on the basis of the American selling price. It was on an appeal for reappraisement pursuant to § 501 that the Proclamation was held invalid by the Court of Customs and Patent Appeals. Its invalidity, according to that court, flowed from the basis on which the Commission computed the Japanese cost of production. By § 336(e) (2) the Commission was authorized, when the cost of production of a foreign article was not "readily ascertainable," to accept as evidence thereof the "weighted average of the invoice prices or values for a representative period." The Commission took the weighted average of such prices for the period from December 1, 1930, to September 30, 1932. Those prices were in Japanese yen. Sec. 336 contains no provision for conversion of currency. But the Commission in order to compare those prices with domestic costs converted them into United States dollars, at the average rate of exchange for 1932. That period was selected because Japan went off the gold standard in December 1931 and the value of the yen in terms of United States dollars declined steadily from that date to November 1932.[3]

---

[3] The Commission in its report to the President, dated April 5, 1934, stated on this point:

"The years 1931 and 1932 are representative with respect to the domestic cost of production of canned clams and the invoice prices of Japanese canned clams, in terms of Japanese currency. During most of 1931 the exchange rate of the Japanese yen for the dollar was not much below par, whereas since that time it has been much

The Court of Customs and Patent Appeals held that it was error to convert invoice prices for one period into United States dollars at the average rate of exchange for another period. In its view the phrase "weighted average of the invoice prices or values for a representative period" contained in § 336 (e) (2) must be construed as though it read, "weighted average of the invoice prices or values in United States currency for a representative period." The government, however, urges that if the Commission were forced to take the conversion rate for the earlier period, to which it had to resort in order to obtain the invoice prices, it would use a rate which had merely an historical interest and which did not reflect the conditions which made desirable an increase in the duties, viz. the depreciation in the value of the yen.

The determination of foreign exchange value was prescribed, in the procedure outlined by Congress, neither for the action of the Commission nor for that of the President.[4] There is no express provision in the Act that the rate of exchange must be taken for the same period as the invoice prices. To imply it would be to add what

below par. For this reason the invoice prices of the Japanese product imported in 1931, when converted to dollars at the then current rate of exchange, are not representative of the present or probable future invoice values in terms of dollars. The Commission has, therefore, used, for comparison with the domestic costs, the invoice prices in yen as evidence of costs of the Japanese product during 1931 and 1932, converted to dollars at the average rate of exchange for 1932. Although the exchange rate of the yen has risen since April 1933, the rate now prevailing is not much higher than the average rate for 1932."

[4] Sec. 522 (b) provides that for "the purpose of the assessment and collection of duties" upon imports, foreign currency shall be converted at values proclaimed by the Secretary of the Treasury for the quarter in which the merchandise was exported. This section clearly has no application to the issue here, since it applies only to assessment and collection of duties—matters outside the functions and duties of the Tariff Commission.

Congress has omitted and doubtless omitted in view of the very nature of the problem. The matter was left at large. The President's method of solving the problem was open to scrutiny neither by the Court of Customs and Patent Appeals nor by us. Whatever may be the scope of appellate jurisdiction conferred by § 501 of the Tariff Act of 1930,[5] it certainly does not permit judicial examination of the judgment of the President that the rates of duty recommended by the Commission are necessary to equalize the differences in the domestic and foreign costs of production.

The powers which Congress has entrusted to the President under the Act of 1930 do not essentially differ in kind from those which have been granted him under the tariff acts for well over a century. See *Norwegian Nitrogen Products Co.* v. *United States,* 288 U. S. 294, 308 *et seq.,* for a review of the statutes. Since its creation in 1916 the Commission has acted as an adviser to the Congress or to the President. Under § 336 of the Act of 1930 the Commission serves the President in that role. It does not increase or decrease the rates of duty; it is but the expert body which investigates and submits the facts and its recommendations to the President. It is the judgment of the President on those facts which is determinative of whether or not the recommended rates will be promulgated. In substance and to a great extent in form (*Norwegian Nitrogen Products Co.* v. *United States, supra*) the action of the Commission and the President is but one stage of the legislative process. *Hampton & Co.* v. *United States,* 276 U. S. 394. "No one has a legal right to the maintenance of an existing rate or duty." *Norwegian Nitrogen Products Co.* v. *United States, supra,* p. 318. And the judgment of the

[5] That section gives either party a right to appeal to the Court of Customs and Patent Appeals on "a question or questions of law only."

President that on the facts, adduced in pursuance of the procedure prescribed by Congress, a change of rate is necessary is no more subject to judicial review under this statutory scheme than if Congress itself had exercised that judgment. It has long been held that where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review. *Martin v. Mott,* 12 Wheat. 19; *Monongahela Bridge Co.* v. *United States,* 216 U. S. 177; *Dakota Central Telephone Co.* v. *South Dakota,* 250 U. S. 163; *United States* v. *Chemical Foundation, Inc.,* 272 U. S. 1. As stated by Mr. Justice Story in *Martin* v. *Mott, supra,* pp. 31–32: "Whenever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction, that the statute constitutes him the sole and exclusive judge of the existence of those facts."

For the judiciary to probe the reasoning which underlies this Proclamation would amount to a clear invasion of the legislative and executive domains. Under the Constitution it is exclusively for Congress, or those to whom it delegates authority, to determine what tariffs shall be imposed. Here the President acted in full conformity with the statute. No question of law is raised when the exercise of his discretion is challenged.

The other points raised are so unimportant as not to merit discussion.

*Reversed.*

Mr. Justice McReynolds is of the opinion that the judgment below should be affirmed.