## WATERMAN S. S. CORPORATION v. CIVIL AERONAUTICS BOARD.

### No. 11765.

Circuit Court of Appeals, Fifth Circuit.

Feb. 14, 1947.

Francis H. Inge, of Mobile, Ala., and Joseph M. Paul, Jr., of Washington, D. C., for petitioner.

H. Don Reynolds, Chief Enforcement & Lit. Section, Civil Aeronautics Board, of Washington, D. C., Edw. J. Hickey, Jr., Sp. Asst. to Atty. Gen., and Robert Weinstein, Asst. U. S. Atty., of New Orleans, La., for respondent.

R. Emmett Kerrigan, of New Orleans, La., for intervener, Chicago & Southern Air Lines, Inc..

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

On May 17, 1946, the Civil Aeronautics Board made a proposed decision and order on its consolidated docket No. 525 in which some fifteen applications for certificates to engage in air transportation between points in the United States and points in Latin

America, including Mexico, Columbia, Venezuela, Brazil, Cuba, and Puerto Rico, were disposed of. The President approved the order on May 22, 1946, and it was served on the parties affected on May 24, 1946. By the order Waterman Steamship Corporation was denied a certificate of public convenience and necessity for the route it sought, and one was granted to a rival applicant, Chicago and Southern Air Lines, Inc. The latter we will refer to as C. and S. and the former as Waterman. On September 6, 1946, Waterman filed in this court a petition for review of certain portions of the order affecting it and C. and S. under Section 1006 of the Civil Aeronautics Act, 49 U.S.C.A. § 646, and a copy was transmitted to the Board. The Board on November 4, 1946, moved to dismiss the petition mainly on the ground that this order, because approved by the President, was not subject to judicial review; and alternatively that if the petition be not dismissed the order be forthwith affirmed for the same reason. On November 29, 1946, C. and S. was allowed to intervene, and moved to dismiss the petition on the same grounds; and also because C. and S. was an indispensable party and had not been served with formal notice of it; and because the petition was not filed within sixty days from service of the order on May 24, 1946, as required by Section 1006. A skeleton record only has been filed, to save the preparation of a very voluminous one if the petition is to be dismissed. The motions to dismiss only are now presented for decision.

■ 1. As to timeliness, it appears that the order was published as such on May 24, 1946; on June 24, 1946, a motion for reconsideration was filed by Waterman, which the Board entertained and considered on its merits and overruled on July 12, 1946. The petition for review was well within the sixty days allowed by the statute from the latter date. The rules of procedure of the Board provide for such a motion filed within thirty days after the service of the order, or at a later date by leave of the Board. It is argued by Waterman that the thirty days expired on a Sunday and for that reason an extra day was by a general principle permitted. We do not think it matters. The Board did not reject the motion because not in accord with its rule, but decided it on its merits. It does not now raise any such contention. We think the motion, although it did not by the Board's rules supersede or suspend the order, operated to retain the Board's authority over the order, so that the order overruling the motion should be taken as the final "entry of such order" intended by the statute to start the running of the sixty-day period for judicial review. Braniff v. Civil Aeronautics Board, 79 U.S.App. D.C. 341, 147 F.2d 152; Saginaw Broadcasting Co. v. Federal Communications Commission, 68 App.D.C. 282, 96 F.2d 554.

■ 2. C. and S. is manifestly interested in the review and entitled to be heard. Section 1006, however, does not provide for any service except upon the Board. We should perhaps rightly have ordered some service or notice to C. and S., but this is not now necessary for it has voluntarily appeared by intervention. The petition should not be dismissed on a question of parties.

■ 3. There remains the larger question whether an order of the Board which has the approval of the President under Section 801 of the Act [1] may be reviewed by this court under Sec. 1006. By Sec. 401, 49 U.S.C.A. § 481, certificates must (with exceptions not here material) be obtained from the Board by "air carriers", including those undertaking foreign transportation, and the Board may revoke them.

---

[1] 49 U.S.C.A. § 601. "The issuance, denial, transfer, amendment, cancelation, suspension, or revocation of, and the terms, conditions and limitations contained in, any certificate authorizing an air carrier to engage in overseas or foreign air transportation, or air transportation between the places in the same territory or possession, or any permit issuable to any foreign air carrier under section 482, shall be subject to the approval of the President. Copies of all applications in respect of such certificates and permits shall be transmitted to the President by the Administrator of Civil Aeronautics Board before hearing thereon, and all decisions thereon by the Administrator of Civil Aeronautics Board shall be submitted to the President before publication thereof * * * ".

By Sec. 402, 49 U.S.C.A. § 482, "foreign air carriers" must obtain permits from the Board in a similar manner. We learn from the definitions in Sec. 1, 49 U.S.C.A. § 401, (2), (19), that "air carrier" means a citizen of the United States who undertakes air transportation, while "foreign air carrier" means a person not such citizen who engages in foreign air transportation. The former is granted a certificate and the latter a permit under different sections of the Act. But by the precise terms of Sec. 801 if the certificate of the United States citizen covers foreign air transportation its issuance, denial, revocation, etc., are subject to the approval of the President, and so also are such matters as to any permit issuable to any foreign air carrier. We are emphasizing the separateness of the provisions as to the certificates of the citizen from those as to the permit of the foreigner. Now Sec. 1006(a), 49 U.S.C.A. § 646(a), we think is equally clear and precise: "*Any order*, affirmative or negative, issued by the Board under this act, *except any order in respect of any foreign air carrier* subject to the approval of the President as provided in section 801 of this act, shall be subject to review by the circuit courts of appeals of the United States * * *". The language here shifts from certificates and permits to *orders* affirmative or negative of the Board, but it is evident that certificates and permits are to be issued, denied, revoked, or otherwise dealt with by the Board through orders, which are frequently so named throughout the Act. All such orders are reviewable with one exception—an order in respect of a foreign air carrier subject to approval of the President as provided in Section 801. The words are too plain to be misunderstood. If Congress had intended to except all orders made subject to Presidential approval by Section 801, fewer words would have sufficed. To make that meaning we must eliminate the words "in respect of any foreign air carrier", or we must change them to read "in respect of any foreign air transportation". Though we might think this change would make a better law, we have no right thus to amend it. The Bill which passed both the House and the Senate and was approved by the President does not read that way.[2] That Bill became the law, by the express provision of the Constitution, Art. 1, Sec. 7. Since no foreign air carrier is here concerned and no order has been made concerning such a carrier, the one exception Congress has made does not apply.

We recognize of course that "any order affirmative or negative" does not mean interlocutory or indecisive orders, but refers only to the Board's final conclusions. We recognize, too, the important role given the President in Sec. 801 in respect of foreign air transportation both by our citizens and by foreigners, because of complications ever possible in our foreign relations. While the right to regulate foreign commerce is vested by the Constitution in the Congress, Art. 1, Sec. 8(3), the President is charged with a peculiar responsibility for our relations, by treaty and otherwise, with other countries, and is often possessed of information not proper to be made public, which may cause what the Board has concluded to be commercially desirable seem to him politically or otherwise undesirable. Such considerations probably led the Congress to give the President what amounts to an absolute veto as to all orders of the Board respecting all the matters named in Sec. 801. Since the order would still be the order of the Board, this veto power we think would persist as to any modification of such an order by the court under Section 1006(c) or any new order framed by the Board under direction of the court. The court has no power to question or review either the approval or disapproval of the President. He does not have even to state his reasons. On review under Sec. 1006 the court has only to consider the order of the Board and whether it is according to the Act. Congress has made the Board its regulatory agent touching public convenience and necessity, the fitness, willingness and ability of the applicant for a

2 It is stated in argument and not denied that the Bill as introduced did read "in respect of foreign air transpor-tation" and was changed in Committee to the present words, showing a deliber choice of the latter.

certificate or permit to operate successfully, and other things named in the Act; and the Board's action is subject to court review to the extent the Act provides and permits. It is not final till the Board and the court have completed their functions. Thereafter the completed action must be approved by the President as to citizen air carriers in cases under Sec. 801. As to foreign air carriers the court has no function at all, and the President's action on the Board's order is final and unreviewable.

We are aware that this question was decided otherwise in Pan American Airways Co. v. Civil Aeronautics Board, 2 Cir., 121 F.2d 810. The court there leaned upon United States v. George S. Bush & Co., 310 U.S. 371, 60 S.Ct. 944, 84 L.Ed. 1259. We think the Bush case does not apply. It involved Sec. 336 of the Tariff Act of 1930, 46 Stats. 696, 19 U.S.C.A. § 1336, and the Tariff Commission set up in that Act. That Commission was authorized to make no orders, but only to investigate and report to the President, who then by proclamation would make the recommended changes in the tariff rates "if in his judgment" they ought to be made. The only action was taken by the President. The Aeronautics Board has powers similar to those of the Interstate Commerce Commission, and makes orders of many kinds affecting air carriers and air commerce. The certificates and permits here involved are issued or denied on the orders of the Board. The President cannot make any order, though under Sec. 801 he can frustrate some of them. Under that section copies of applications and proposed certificates and permits are to be transmitted to him before a hearing, and decisions are to be submitted to him before publication. Apparently this is for his information and to give him opportunity to look into the matter and give the Board any facts he may desire. He is not required to do anything until the Board reaches a decision and is ready to make an order, when he may approve it, or stop it by a disapproval. If he approves, it means only that he consents. It does not deprive the court of its power to see that the order is otherwise according to law, except as to foreign air carriers. Because of our view that the President's power to disapprove applies as well after as before the court acts we see no chance of a deadlock, no conflict of function. The Act clearly defines the function of court and President. Each may be expected to respect the function of the other. Nor is there such prospect of futility as ought to deter the court. Courts try criminal cases notwithstanding an executive pardon may frustrate a conviction. They constantly reach conclusions in all kinds of cases undeterred by the chance that a higher court may disapprove their orders.

We therefore esteem it our duty to entertain this petition under the Act. We will, of course, give proper regard to the presumptions due to the Board's action in favor of C. and S. If it should appear to us or to the Supreme Court that that action was for any reason unlawful, so that C. and S. cannot serve the proposed air route, it may be that both the Board and the President would reconsider the denial of a certificate to Waterman. We as yet on a skeleton record have little idea of what the merits of the controversy may be. We are holding merely that we have the jurisdiction and the duty to find out.

The motions to dismiss are denied.