NICOLÁS CARDONA ET AL., Petitioners, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent.

No. 491.   Argued April 2, 1956.—Decided October 9, 1956.

*Fiddler, González & Nido* and *Carlos J. Faure* for petitioners.
*Angel de Jesús Matos, Aida Casañas O'Connor,* and *Donald R. Dexter* for the Manager of the State Insurance Fund.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The Manager of the State Insurance Fund consolidated for the year 1951–52, as he had in previous years since 1944–45, the risks of cultivation and harvesting of sugar cane and all other agricultural activities in Puerto Rico, fixing a premium of $3.90 per $100 of pay roll. On June 26, 1951, the petitioners, employers engaged in the cultivation and harvesting of sugar cane and insured as such under the provisions of the Workmen's Accident Compensation Act—No. 45 of April 18, 1935 (Sess. Laws, p. 250), as amended, 11 L.P.R.A. § 1 *et seq.*—requested the Industrial Commission of Puerto Rico to separate the activity in which they were engaged from those activities included in the classification of "Agriculture in General," and to fix separate premiums to cover only the risks appertaining to their activity. Their contention was that the Manager, in including the harvesting and cultivation of sugar cane within the classification "Agriculture in General," had acted unreasonably and capriciously, without sufficient basis to establish distinctions or discriminations, thus depriving them of their property without the due process of law and denying to them the equal protection of the laws. The Industrial Commission, after hearing at length the petitioners and the Manager, entered an order ratifying the decision of the Manager. Their motion for reconsideration having been denied, the petitioners appealed to this Court to review the decision under § 11 of the Act. 11 L.P.R.A. § 12. We issued the writ sought.

They question in the first place the power or authority of the Manager to establish classifications and consolidations of risks, occupations, or industries. Yet, that

power or authority arises clearly from the context of § 23 of Act No. 45 *supra*, which copied textually from 11 L.P.R.A. § 24 reads as follows:

"Before June 1 of each year it shall be the duty of the Manager of the State Insurance Fund, in the exercise of the power and discretion hereby conferred upon him, to prepare a schedule of classifications according to the occupations or industries to which this chapter refers. He shall also fix for each class of occupation or industry the lowest possible premium rates, including minimum rates, consistent with the establishment of a solvent state insurance fund and the creation of a reasonable surplus.

"Before July 1, 1936, and annually thereafter, it shall be the duty of the Manager of the State Insurance Fund to revise such schedule of classifications prescribed in the preceding paragraph as, in his judgment, should be revised. Such revision shall be in accordance with the underwriting experience accumulated from the beginning of the effectiveness of this chapter and up to December 31 of the preceding year and such other incidental experience and the available statistics in regard to the hazards and underwriting risks in the classifications to be revised.

"In connection with this annual revision of the schedule of classifications, it shall be the duty of the Manager of the State Insurance Fund to revise such premium rates, including minimum rates, corresponding to the classifications in force as, in his judgment, should be revised. Such premium rates, including minimum premium rates for each class of occupation or industry, shall be the lowest possible rates consistent with good actuarial judgment and with the conservation of a solvent State Fund and the maintenance of a reasonable surplus, after taking into consideration the losses incurred through legitimate claims for injury and death, the payment of which he has authorized, chargeable to the State Insurance Fund, for the benefit of the injured, and of the beneficiaries of those deceased, and giving full consideration to the maintenance of adequate statutory claims and contingent reserves, as well as the costs of administration and all other expenses; and in order that said object may be attained, the Manager shall bear in mind the following requirements in classifying the occupations or industries, and in fixing the premium rates for the risks of same; *Provided,*

That the insurance on coffee plantations and the coffee crop shall be included within the classification of general agricultural insurance.

"1. The manager shall keep an accurate account of the money paid in for premiums by each of the several groups of occupations or industries, and the expenses of administering the State Fund, as well as the disbursements and expenses incurred on account of injuries or death of laborers and employees in each of said groups of occupations or industries, including the creation of a reserve to meet anticipated or unexpected losses until all claims mature; . . .

"2. The Manager of the State Insurance Fund may use, for grading the premium rates, such system as, in his judgment, has been the best calculated to fix individually, and in the most equitable manner, the value or the premium rate of each risk, and which is based on the experience derived from the accidents that occurred and appear in the files of each employer individually, and to encourage and stimulate the prevention of accidents; he shall formulate fixed and equitable rules controlling the same, which rules, however, shall conserve to each risk the basic principles of Workmen's Compensation Insurance."

By this section the Manager of the State Insurance Fund is vested with power and discretion. He also has the duty of preparing before June 1 of each year a schedule of classifications according to the occupations or industries to which the Workmen's Accident Compensation Act refers; to fix for each class of occupation or industry the lowest possible premium rates, consistent with the establishment of a solvent state insurance fund and the creation of a reasonable surplus; to revise the schedule of classifications which in his judgment should be revised before July 1 of each year, in accordance with the underwriting experience accumulated from the beginning of the effectiveness of the Act and up to December 31 of the preceding year, and such other incidental experience and the available statistics in regard to the hazards and underwriting risks in the classification to be revised; and—by virtue of a proviso—to include the insurance on coffee plantations and the coffee crop within the classification of general agricultural insurance.

The courts will not interfere with the discretion granted by law to the Manager, unless such officer acts arbitrarily, capriciously, or fraudulently. In *United States* v. *Bush & Co.*, 310 U. S. 371, 84 L. Ed. 1259, 1262, the United States Supreme Court, ratifying its former opinion, stated that "Whenever a statute gives discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction, that the statute constitutes him the sole and exclusive judge of the existence of those facts." See, also, *United States* v. *California & Oregon Land Co.*, 37 L. Ed. 354; 43 Am. Jur., *Public Officers*, § 255; and 11 Am. Jur., *Const. Law*, § 190. In *State* v. *Industrial Commission*, 162 N. E. 800, in which a question similar to the question herein was involved, the Supreme Court of the State of Ohio in a *per curiam* opinion stated as follows:

"Classification cannot be applied to an occupation or industry as an individual unit. The classification contemplated by the Workmen's Compensation Law . . . relates to occupations or industries as a class, operating generally, under similar conditions. Such is the purport of section 1465 . . . authorizing the classification of occupations or industries. Under that section classification is not made according to the employment, or number of men engaged in it, or according to the amount paid, but the classification of occupations or industries is made 'with respect to their degree of hazard.'"

*Cf. United States* v. *Rock Royal Co-operative*, 307 U. S. 533, 83 L. Ed. 1446, 1467. We do not believe, therefore, that in making the consolidation involved herein the Manager acted arbitrarily or capriciously, or in anyway contrary to law.

Petitioners further contend that the Manager violated the due process of law clause by his failure to hold hearings, when consolidating the premiums, or to give them an opportunity to intervene in connection therewith. Again they are wrong. We have repeatedly held that our Workmen's Accident Compensation Act is constitutional. *Mon-*

*taner* v. *Industrial Commission*, 54 P.R.R. 52; *Heirs of Rodríguez* v. *Industrial Commission*, 53 P.R.R. 784, 788. According to the evidence before the Industrial Commission, hearings were held in 1944–45, when the Manager consolidated, for the purpose of fixing the premiums, the cultivation and harvesting of sugar cane and agriculture in general. In successive years the Manager held hearings only for the purpose of fixing the different premiums, but not for revising or consolidating them. This, in our opinion, is sufficient. The law does not specify that it is necessary to hold hearings for the purpose of revising or consolidating premiums; but it does provide, as has been noted, that the revision shall be made in accordance with the underwriting experience accumulated, with such other incidental experience, and the available statistics in regard to the hazards and underwriting risks in the classification to be revised. The Manager's lengthy testimony shows, in our opinion, that he acted in conformity with the provisions of the statute governing the matter.

Moreover, it has been held that the due process of law requirements are met if hearings are granted by administrative or judicial action at any time before the government action becomes final. See *Martínez* v. *Superior Court, ante,* p. 428, and *Matos* v. *Mgr. State Ins. Fund,* 54 P.R.R. 72.

Petitioners further charge that the Industrial Commission also erred in ruling that the appeal taken by them had prescribed. In this connection, the respondent stated as follows:

"We believe that, since the Manager decided to promulgate for the year 1944–45 one single classification for agriculture designated as Agriculture in General, with a premium rate of $4.95 per $100 of pay roll, and since the complaining employers have not appealed at any time to the Industrial Commission during the year in which the Manager's decision became effective, the appeal from the same classification has prescribed."

In so expressing itself, the Commission undoubtedly committed error. Section 24 of the Act—11 L.P.R.A. § 25— provides in its pertinent part that:

"The decisions of the Manager, fixing and regulating the premium rates for each group of occupations or industries, and the rate classifications to govern each group or industry in particular, or any order increasing the premium rate for a certain employer, as provided in the preceding section, may be reviewed by the Industrial Commission of Puerto Rico in the following manner:

"1. Any regular or permanent employer aggrieved may file with the Industrial Commission of Puerto Rico, within a period of thirty (30) days after the new rates are promulgated, . . . a petition for review by said Industrial Commission of Puerto Rico of the decisions rendered by the Manager in regard to rates or premiums for one or more occupations or industries giving the reasons why said rates or premiums should be amended; . . ."

Since under the foregoing section it is the duty of the Manager to revise the premiums *every year*, the fact that he made a consolidation for the first time in the year 1944–45 did not necessarily imply that the appeal had to be taken within 30 days after making the original consolidation. For the year 1951–52, it was his duty to make a determination, which he did, of the rates or premiums to govern for that year. The 30-day period within which the employers could appeal to the Commission began to run as of the promulgation of the new rates or premiums. Since the Manager's determination was to be effective as of July 1, 1951, the appeal taken in this case on the 26th day of the said month and year was seasonable.

On the other hand, although the Commission stated that the appeal taken by complainant had prescribed,[1] it

---

[1] What the Commission undoubtedly meant to say was that, since the appeal taken was belated, it lacked jurisdiction to take cognizance thereof. In that case, it is its duty to so declare without considering the merits of the question before it. *P. R. Housing Authority* v. *Sagastivelza*, 71 P.R.R. 406, 409.

640

decided the matter on the merits and the dismissal had no consequences of any kind whatever. The error thus committed is therefore not reversible. *Ex parte Montalvo*, 70 P.R.R. 437, 443.

The order appealed from will be affirmed.

Mr. Justice Saldaña agrees with the result.