58 CCPA

**AMITY FABRICS, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**No. 5362, C.A.D. 1006.**

United States Court of Customs and Patent Appeals.

Dec. 30, 1970.

---

States (TSUS), 22.5 per cent ad valorem, and is subject to duty as so classified.

Appellant contends that the merchandise is properly classifiable under paragraph 907 of the Tariff Act of 1930, as modified and supplemented by T.D. 51802 and T.D. 54399, respectively, and as amended by Public Law 86–795, as waterproof cloth, with duty assessable at 11 per cent ad valorem. In the alternative, appellant suggests the applicability of items 355.65, 356.25, 798.00 or 798.50, TSUS. Appellant further contends that if none of the above are applicable, the assessment is unlawful, and the merchandise should therefore be admitted free of duty.

The statutes involved are set forth in pertinent part. The goods were classified under:

Schedule 3, Part 4, TSUS:

Pile fabrics, in which the pile was inserted or knotted during the weaving or knitting, whether or not the pile covers the entire surface, and whether the pile is wholly or partly cut or is not cut:

    Of cotton:

     *     *     *     *     *     *     *

    Velveteens:

     *     *     *     *     *     *     *

      Other, including twill-back:

     *     *     *     *     *     *     *

346.24 Valued over $1.10 per square yard ................22.5% ad val.

Appellant's claim is asserted under:

Paragraph 907, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as supplemented by Presidential Proclamation, T.D. 54399, and as amended by Public Law 86–795:

Waterproof cloth, wholly or in chief value of cotton or other vegetable fiber, but not in part of India rubber ...............11% ad val.

Public Law 86–795:

SEC. 2. In order to insure a correct interpretation of the provision "waterproof cloth" in paragraph 907, Tariff Act of 1930, it is hereby declared that it was and is the true intent and meaning of paragraph 907 to limit the term "waterproof", when applied to cloth, "wholly or in chief value of cotton or other vegetable fiber, whether or not in part of India rubber", to cloths of a kind generally used in the manufacture of articles which are designed to afford protection against water to the extent expected in raincoats, protective sheeting, dress shields, umbrellas, and

---

George Bronz, Washington, D. C., attorney of record, for appellant.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Peter Jay Baskin, New York City, for the United States.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and McMANUS, Judge, Northern District of Iowa, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision and judgment of the United States Customs Court, Second Division,[1] holding that the imported twill back velveteen pile fabric is *eo nomine* provided for in item 346.24 of the Tariff Schedules of the United

---

[1]. 62 Cust.Ct. 572, C.D. 3828 (1969).

similar articles. Even when cloth possesses water repelling characteristics, it is not classifiable as waterproof cloth within the meaning of paragraph 907, Tariff Act of 1930, unless it is of a kind generally used in the manufacture of articles of the class specified in the preceding sentence.

Alternative provisions asserted below:

Schedule 3, Part 4, TSUS:

Woven or knit fabrics (except pile or tufted fabrics) of textile materials, coated or filled with rubber or plastics material, or laminated with sheet rubber or plastics, except foam or sponge sheet:

355.65 Of vegetable fibers ....... 11% ad val.

Woven or knit fabrics (except pile or tufted fabrics) of textile materials, coated or filled, not specially provided for:

\* \* \* \* \* \* \*

Other:

356.25 Of vegetable fibers ....... 10% ad val.

Schedule 7, Part 14, TSUS:

Any article, not provided for elsewhere in these schedules:

Which is similar in the use to which it may be applied to any article or articles enumerated in any of the foregoing provisions of these schedules as chargeable with duty:

798.00 Most resembling as to use a particular enumerated article chargeable with duty ................. The same rate of duty as the particular article which it most resembles as to use.

798.50 Not most resembling as to use a particular enumerated article chargeable with duty, but equally resembling as to use two or more enumerated articles chargeable with duty ... The rate of duty applicable to that one of such two or more articles which it most resembles in respect to the materials of which it is composed.

The Tariff Classification Act of 1962, section 101(b), P.L. 87–456, provides in relevant part that:

(b) Such new title I (hereinafter in this Act referred to as the "Tariff Schedules of the United States") shall consist of—

(1) the general headnotes and rules of interpretation;

(2) schedules 1 to 8, inclusive; and

(3) the appendix to the tariff schedules; \* \* \* and

(4) subject to subsection (c), such changes in the provisions identified in paragraphs (1), (2), and (3) of this subsection as the Commission decides—

(A) are necessary to reflect changes in tariff treatment made by statute or under authority of law, arising either before the date of the enactment of this Act or on or after such date of enactment and before the date on which the Tariff Schedules of the United States is published pursuant to subsection (d), or

(B) are otherwise necessary.

In its determinations under this paragraph, the Commission shall apply the standards it applied in its report of November 15, 1960 \* \* \*.

The questions presented by the record are succinctly stated by appellee as follows:

1. Whether section 101(b) (4) (A) of the Tariff Classification Act of 1962 provided for mandatory rather than discretionary action on the part of the Tariff Commission.

2. Whether Public Law 86–795 constituted a change in tariff treatment of such a nature. that the Tariff Commission was compelled under section 101(b) (4) (A), *supra*, to incorporate the change into the new tariff schedules.

3. Whether Congress had adopted the changes proposed by the Tariff Commission with respect to waterproof cloth.

4. Whether appellant is entitled to the relief which it claims.

The case was submitted for decision below upon written stipulation of counsel to the effect that the merchandise in question consists of first quality twill back velveteen pile fabric similar in all material respects, including waterproofing, to the merchandise in Amity Fabrics, Inc. v. United States, 51 Cust.Ct. 97, C.D. 2416 (1963), appeal dismissed 51 CCPA 129 (1964). In that case the merchandise was held to be dutiable at the rate of 11 per cent ad valorem under paragraph 907, Tariff Act of 1930, as modified, supplemented and/or as amended. The record in C.D. 2416 was incorporated and made a part of the record herein.

The Customs Court observed that while the ultimate question to be deter-

mined herein is the proper classification of the subject merchandise, the resolution of this question depends not upon the character and composition of the cloth, which have been stipulated, but upon the fundamental issue of whether in failing to incorporate a specific provision for waterproof cloth into the Tariff Schedules of the United States, the Tariff Commission violated the dictates of the Tariff Classification Act of 1962, Public Law 87–456.

Appellant's contention is that Public Law 86–795, which interpreted paragraph 907 of the Tariff Act of 1930, was a statutory change in the tariff treatment of waterproof cloth which should have been reflected in the TSUS by virtue of section 101(b) (4) (A) of the Tariff Classification Act of 1962. Appellant submits that the failure of the Tariff Commission to so provide requires classification of the instant merchandise under paragraph 907 of the Tariff Act of 1930, as amended by Public Law 86–795, which allegedly has not been validly superseded. Alternatively, appellant desires classification under various other TSUS items, or as an article entitled to free entry as not one covered by any valid provision of the TSUS.

Appellee's position, in essence, is that the Tariff Commission was exercising its discretionary powers pursuant to section 101(b) (4) (A) of the Tariff Classification Act of 1962 when it chose not to include a specific provision for waterproof cloth in the TSUS. In this connection the Customs Court stated:

> Assuming arguendo, though we do not so find, that Public Law 86–795 was a "change in tariff treatment," we nevertheless are of opinion that the instructions given to the Commission in section 101(b) (4) (A) of the Tariff Classification Act were discretionary rather than mandatory and that plaintiff is without grounds to challenge the Commission's use of its discretion.

■ The conclusion that Congress invested the Commission with discretionary powers is amply supported by the explicit language of section 101(b) (4) (A), which provides that the schedules shall include:

> \* \* \* such changes \* \* \* as *the Commission decides*—
>
> > (A) are necessary to reflect changes in tariff treatment made by statute \* \* \*. [Emphasis added.]

We believe it clear that the words employed by Congress demonstrate that it was conferring specific authorization on the Commission to judge and determine whether statutes passed before the date on which the TSUS were finally published constituted changes in tariff treatment which required modification of the TSUS. We think it rationally deducible that the Commission decided that Public Law 86–795 was not a change in tariff treatment, or if it were a change, it was not such which required a change in the tariff schedules. It is our view that neither by way of omission or commission did the Commission act beyond the scope of its authority in deciding that Public Law 86–795 did not require the incorporation of a provision for waterproof cloth into the tariff schedules. What it did was in the proper exercise of the powers conferred on it by Congress.

While we do not deem it necessary to a resolution of the issues here presented to discuss *in extenso* the matter of legislative history including Congressional debate and observations, suffice it to say that in our view the legislative history of section 101(b) amply supports the conclusion that Congress intended that the Commission use its discretion in determining whether certain changes were to be made in the tariff schedules. The joint statement of both the House Ways and Means Committee and the Senate Finance Committee supports this conclusion. That statement is as follows:

> The only changes which can be made in the tariff schedules, after the enactment of this bill, will be those which the *Tariff Commission finds are required to be made* by virtue of legis-

lation, court decisions, or authoritative administrative decisions, all of which necessarily must be reflected in the new tariff schedules. *Certain other changes,* such as those necessary to correct errors or inadvertent omissions or to clarify language cannot be made until reviewed by Congress. [House Report No. 1415 (87th Cong.), page 4; Senate Report No. 1317 (87th Cong.), page 4, U.S.Code Cong. & Admin.News, p. 1644.] [Emphasis supplied.]

We are of the opinion that the statute itself as well as the Senate and House reports is convincing that it was within the Tariff Commission's discretion to determine if Public Law 86–795 was a change in the tariff treatment which required a change in the new tariff schedules. It is not within the province of this court to say whether such discretion was prudently conferred or wisely used.

It has long been held that where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate to carry out the policy of Congress, the judgment of the officer as to the existence of the facts calling for that action is not subject to review. [United States v. George S. Bush & Co., 310 U.S. 371, 60 S.Ct. 944, 84 L.Ed. 1259 (1940).]

We therefore find that the Tariff Commission had to determine the effects of Public Law 86–795 upon the 1930 provision for waterproof cloth and upon the proposed TSUS, and its use of discretion in not modifying the tariff schedules to provide *eo nomine* for waterproof cloth is not subject to being judicially disturbed absent an abuse of that discretion.

As to the question of which TSUS item applies to the imported merchandise, we agree with the Customs Court that the importations at bar are properly classifiable as plain back velveteen in item 346.24 of the TSUS. In regard to alternative items under which

appellant seeks classification, we adopt the reasoning of the Customs Court where it was stated:

Since the parties have agreed that the velveteen in question is a pile fabric, it is not classifiable, either directly or by similitude, under item 355.65 or 356.25, which specifically except pile fabrics. Nor is it classifiable under items 798.00, 798.50 * * * since the provision under which the goods were assessed most specifically describes the importation. Nor can they be admitted free of duty for the reason that there is a dutiable provision for velveteen validity [sic] in force.

The judgment of the Customs Court overruling the protest claims and sustaining the classification of the subject importations as plain back velveteen in item 346.24 of the TSUS is affirmed.

Affirmed.

RICH, Judge (concurring).

I agree that we should affirm the decision below. My reasons for doing so, however, are somewhat different from those which I seem to find in the majority opinion, at least in emphasis.

This is an unusual case not given to absolutes in reaching a conclusion. One of its most unusual features is that appellant, as the majority says, claims classification under the Tariff Act of 1930, as amended, which act had been wholly repealed at the time of the importations. In effect, appellant asks us to revive it as to only one provision, paragraph 907. This would indeed create an anomalous situation, reviving by judicial fiat one provision of a law repealed by Congress. Reason and common sense argue against doing such a thing if it can be avoided.

The majority opinion repeats the four points which the government brief says are involved on this appeal: 1. whether section 101(b) (4) (A) was mandatory on the Tariff Commission or gave it discretion; 2. whether Public Law 86–795 was a "change"; 3. whether Congress adopted (i.e., ratified) the changes made

by the Tariff Commission with respect to "waterproof cloth"; and 4. whether appellant is entitled to the relief it claims. The majority rests its decision altogether on the holding that the Tariff Commission acted entirely within the discretion conferred upon it in determining that Public Law 86-795 was not a change in tariff treatment, or at least not *such* a change as required a change in tariff schedules. I feel this is an over-simplification and somewhat misleading for the reason that the Tariff Commission actually did make a *change* in the tariff schedules with respect to waterproof cloth of cotton or other vegetable fiber. That is what appellant's complaint is based on; under paragraph 907 of the 1930 Act it paid 11% duty and now it has to pay 22.5% because of that change.

The pivotal point of the situation on which appellant relies, moreover, is the decision of this court in United States v. D. H. Grant & Co., 47 CCPA 20, C.A.D. 723 (1959), not mentioned in the majority opinion. The only reason it can be argued that Public Law 86-795 was a "change" in "tariff treatment" which the Tariff Commission was obliged to include in the TSUS is that (a) the *Grant* case, interpreting paragraph 907, gave it a construction that neither the Customs Bureau nor Congress liked, holding to be of no effect a Customs Bureau Letter (T.D. 53630, Oct. 11, 1954) which attempted to plug a loophole, and (b) that Public Law 86-795, enacted by Congress, did what the Customs Bureau Letter was not permitted by this court to do—that is to plug the loophole which Congress said had never been intended, thus effectively overruling the *Grant* case. All the while Congress was making it clear that, so far as it was concerned, the *statutory* law had always been the same, the trouble being with the construction that this court had put on paragraph 907. This construction had made possible avoidance of the intended duty on certain cotton cloth by temporarily waterproofing it merely for the purposes of duty assessment, the water-proofing being removed after the cloth was inside the country. But for the *Grant* case there would have been no need for Public Law 86-795, nor any ground for appellant's argument that a change in tariff treatment took place which had to be included in the new schedules (the odd effect of which would have been to include in TSUS the pre-*Grant* statutory law, as supplemented by the Customs Bureau Letter, wiping out *Grant and* Public Law 86-795 because the latter overruled the former). So the situation is not a simple one.

My view on the government's first issue—whether section 101(b) (4) (A) is mandatory or gives discretion—is that it is both. It cannot be gainsaid that the language gives *some* discretion, otherwise the Commission is not in a position to "decide" anything. At the same time it tells the Commission certain things it is to do. With respect to "waterproof cloth" the Commission, knowing it had a problem, devised a solution, not adverted to by the majority, which it carefully explained to Congress. This explanation, set forth in the Tariff Classification Study, 1960, Vol. 5, p. 134, was as follows:

The existing tariff provisions with respect to coated or filled fabrics are fragmentary and poorly arranged. Included among them but not specifically designated as a coated or filled fabric, is "waterproof cloth, wholly or in chief value of cotton or other vegetable fiber, whether or not in part of India rubber" in paragraph 907. The provision for waterproof cloth has been controversial over the years. It has been interpreted as including certain fabrics which are not coated or filled within the meaning ascribed to that term in this subpart (CAD 723 [the *Grant* case, supra]). The effect of that court ruling holding so-called water-repellant fabrics to be within this provision in paragraph 907 has been carefully studied, and it does not seem desirable or feasible to establish a classification for fabrics on the basis of water repellency unassociated with a

coating or filling concept. The provisions for waterproof cloth, therefore, have been assimilated with the coated or filled fabrics in item 355.65.

Appellant's argument, in essence, is that the Commission could not do that, that it had to keep the old paragraph 907 provision as it was before *Grant*. I disagree. I think this was within the intended grant of discretion, without meaning to indicate just what the limits of that discretion were.

Assuming, arguendo, that the particular solution to the "waterproof cloth" problem did go beyond the strict limits of the discretion given to the Commission, however determined, there is a further reason for affirming in this case. I agree with the government contention that Congress itself—the source of whatever discretionary powers were given to the Commission—approved or ratified the alteration or change in the tariff schedules with respect to waterproof cloth about which appellant complains. Appellant's remedy, therefore, lies with Congress rather than with the courts. After the 1960 report, the legislative and schedule-adopting procedures continued until the final promulgation by Presidential Proclamation No. 3548, effective August 31, 1963. In the interval the House Ways and Means Committee provided an opportunity for interested parties to submit comments on the Tariff Commission proposals, there was the First Supplemental Report in January 1962 to committees of House and Senate, which even included a minor change in item 355.65, and Congress passed the Tariff Classification Act on May 24, 1962, after receiving the comments and suggestions which had been solicited. I have considered appellant's arguments that the procedures were such that it was "reassured" that paragraph 907 and Public Law 86–795 would be in the new schedules because that is the way it read the requirements of 101(b) (4) (A) of the pending bills, but I do not find therein any comment on the clear statement quoted above from the first Tariff Commission Study in which the Commission

said what it was doing about waterproof cloth, followed by the First Supplemental Report which again dealt with item 355.65, the item in which the first report had said waterproof cloth would be "assimilated." Appellant does not persuade me that there was no ratification by Congress of the Commission's solution to the problem.

On the issue of whether Public Law 86–795 effected a "change in tariff treatment," there is the possibility of answering that question both "yes" and "no," depending on how it is viewed. If one looks to the statutes written by Congress, paragraph 907 provided for a certain duty on waterproof cloth. One then had to determine what "waterproof cloth" means. A physical test evolved which created a loophole in the statute, and the Customs Bureau tried to close it by ruling that the question should be decided by a use, rather than a physical, test. The problem came to this court in *Grant* wherein we held in favor of the physical test. Congress then enacted Public Law 86–795 which, in terms, declared what the *statutory* law "was and is." Thus, there never was a change in the statutory law. As to tariff *treatment*, however, there was a change. The "law," consisting of the statute as interpreted by *Grant*, was changed when Congress declared that the *Grant* interpretation of its statute was not in accord with its intent.

In this situation, I expect that the Tariff Commission would have as much trouble as I do in deciding whether *Grant* changed the "tariff treatment" and Public Law 86–795 changed it back or whether *Grant* merely declared what the law was all along and the Public Law changed it. After making a choice in that respect, there remain other problems: Did the Commission have the discretion to make that choice? Assuming a change, was it a change "in tariff treatment made by statute," or "under authority of law [*Grant*]"? If the answer is in the affirmative, what then is "necessary" by way of tariff provisions to "reflect" the change? All this is what

section 101(b) (4) (A) involves and I see no clearcut answer. Hence this litigation.

My answer is that in a difficult situation the Tariff Commission worked out a practical solution, submitted it to Congress, Congress submitted it to the public, and Congress duly enacted a statute pursuant to which the new TSUS come into being as law. I can see no reasonable ground for holding that part of a repealed statute still exists because it was not "legally" superceded. For these reasons I vote to affirm.