The **WEST BEND CO., DIV. OF DART INDUSTRIES, INC., Plaintiff,**

v.

The **UNITED STATES, Defendant.**

**Court No. 80–10–01774.**

United States Court of International Trade.

Decided Nov. 3, 1983.

---

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, New York City (Barbara M. Epstein, Washington, D.C.), for defendant.

Barnes, Richardson & Colburn, New York City (Andrew P. Vance and Michael A. Johnson, New York City, of counsel), for plaintiff.

*Opinion and Order on Motion to Dismiss Claim Under Generalized System of Preferences*

WATSON, Judge:

This decision deals with the government's motion to dismiss one of plaintiff's claims. The action itself covers hot-air corn poppers imported from Hong Kong between April 1, 1980 and March 31, 1981. The importations were classified as electrothermic household appliances under Item 684.20, dutiable at the rate of 8.1 percent ad valorem.[1]

In addition to making claims for alternate classifications, plaintiff has claimed that, if the importations are indeed properly classifiable under Item 684.20, then they should be free of duty under the Generalized System of Preferences (G.S.P.), created by Title V of the Trade Act of 1974 (19 U.S.C. §§ 2461 *et seq.*).

---

1. *Schedule 6, Part 5, Subheading*
Electric instantaneous or storage water heaters and immersion heaters; electric soil heating apparatus, and electric space heating apparatus, electric hair dryers, hair curlers, and other electric hair dressing appliances; electric flatirons; electrothermic kitchen and household appliances; electric heating resis-
tors other than those of carbon; all the foregoing and parts thereof:

\* \* \* \* \* \*

Item 684.20 Toasters, waffle irons, skillets, ovens, stoves, coffee makers and other portable electrothermic kitchen and household appliances ....

Defendant has moved to dismiss plaintiff's claim for duty-free treatment under the G.S.P. on the ground that the importations lost their right to that treatment by the action of the President in Executive Order No. 12204.[2] In Section 4, Annex IV of the Executive Order, Hong Kong was removed from eligibility for Item 684.20. The defendant asserts that the President's action was authorized both by the broad power given to him in 19 U.S.C. § 2464(a)[3] to affect duty-free treatment, and the specific authority set out in 19 U.S.C. §.2464(c)(1)(B)[4] which requires the loss of

duty-free treatment when importations of an eligible article equal or exceed 50 percent of the total value of annual importations of that article. (This will be referred to as the "50 percent limit.")

Defendant further asserts that neither the President's exercise of power under these provisions nor the findings he made are judicially reviewable.

Plaintiff argues that the President acted only under the 50 percent limit of 19 U.S.C. § 2464(c)(1)(B), and that 19 U.S.C. § 2464(d)[5] operates to exempt from the 50

---

**2.** 45 Fed.Reg. 20,740 (1980).

The pertinent part of the Order concerning the authority and intention of the President reads as follows:

> By virtue of the authority vested in me by the Constitution and statutes of the United States, including Title V of the Trade Act of 1974 (88 Stat. 2066, 19 U.S.C. § 2461, *et seq.*) as amended by Section 1111 of the Trade Agreements Act of 1979 (93 Stat. 315), section 604 of the Trade Act of 1974 (88 Stat. 2073, 19 U.S.C. § 2483) and Section 503(a)(2)(A) of the Trade Agreements Act of 1979 (93 Stat. 251), and as President of the United States of America, *in order to modify, as provided by Section 504(c) of the Trade Act of 1974 (88 Stat. 2070, 19 U.S.C. § 2464(c), the limitations on preferential treatment for eligible articles from countries designated as beneficiary developing countries,* to adjust the original designation of eligible articles taking into account information and advice received in fulfillment of Section 503(a) and 131–134 of the Trade Act of 1974 (88 Stat. 2069, 19 U.S.C. § 2463; 88 Stat. 1994, 19 U.S.C. § 2151 *et seq.*), and to modify the designations of beneficiary developing countries in accord with my notifications to the Congress of September 28, 1979, and March 3, 1980, and in accord with technical changes in the identity of certain beneficiary developing countries, it is hereby ordered: [emphasis supplied]

> \* \* \* \* \* \*

**3.** § 2464. *Limitations on preferential treatment*

(a) *Withdrawal, suspension, or limitation of duty-free treatment.*

The President may withdraw, suspend, or limit the application of the duty-free treatment accorded under section 501 (19 U.S.C. § 2461) with respect to any article or with respect to any country; except that no rate of duty may be established in respect of any article pursuant to this section other than the rate which would apply but for this title (19 U.S.C. § 2461 *et seq.*; amendment to 19 U.S.C. § 1202). In taking any action under this subsection, the President shall

consider the factors set forth in sections 501 and 502(c) (19 U.S.C. §§ 2461 and 2462(c)).

> \* \* \* \* \* \*

[For text of 19 U.S.C. §§ 2461 and 2462(c) see note 6 *infra.*]

**4.** § 2464. *Limitations on preferential treatment*

> \* \* \* \* \* \*

(c) Designation, continuance of designation, or redesignation as beneficiary developing country notwithstanding increases in exports to United States. (1) Whenever the President determines that any country—

> \* \* \* \* \* \*

> (B) except as provided in subsection (d), has exported (either directly or indirectly) to the United States a quantity of any eligible article equal to or exceeding 50 percent of the appraised value of the total imports of such article into the United States during any calendar year,

then, not later than 90 days after the close of such calendar year, such country shall not be treated as a beneficiary developing country with respect to such article, except that, if before such 90th day, the President determines and publishes in the Federal Register that, with respect to such country—

> (i) there has been an historical preferential trade relationship between the United States and such country,

> (ii) there is a treaty or trade agreement in force covering economic relations between such country and the United States, and

> (iii) such country does not discriminate against, or impose unjustifiable or unreasonable barriers to, United States commerce,

then he may designate, or continue the designation of, such country as a beneficiary developing country with respect to such article.

> \* \* \* \* \* \*

[For text of the "subsection (d)" mentioned above see note 5 *infra.*]

**5.** § 2464. *Limitation on preferential treatment*

> \* \* \* \* \* \*

(d) *Domestic non-production of like or directly competitive articles.*

percent limit those products which, on a certain date given in the law, were not in competition with products made in the United States. Plaintiff argues that the exemption takes those products entirely outside the exercise of the President's power to end preferred treatment under 19 U.S.C. § 2464(c) and allows the question of whether or not the importations were competitive with U.S. products to be tried in Court in the same manner as a dispute about the product's classification or valuation.

It is the prospect of a trial on the issue of "competitiveness" which requires this motion to be disposed of prior to the alternative claims for classification even though, as a logical matter, a victory for plaintiff on an alternate claim could moot any disputes connected with classification under Item 684.20.

Plaintiff further argues that if indeed the President was empowered to make the competitive evaluation called for by § 2464(d) his evaluation was flawed by a misconception as to the meaning of the word "article," so that by considering "eligible articles" to be abstract tariff item numbers he could not possibly make the determination on the competitiveness of *individual* products which is contemplated by § 2464(d).

In this decision the Court defines the nature of its judicial review of the President's action, analyzes the statutory provisions, finds that the President acted only under the 50 percent limit, holds that he was required to make a finding on the subject of competitiveness under § 2464(d) and did not act in accordance with the law on that matter. The Court is led to deny the motion to dismiss and to conclude that remand for the purpose of the making of a proper determination under § 2464(d) will be the proper remedy if plaintiff's alternative claims for classification are not successful.

To begin with, the Court explains why it limits its judicial review of the President's action to his authority under 19 U.S.C. § 2464(c) and the 50 percent limit.

■■■ In general, the statutory provisions for the G.S.P. display a considerable delegation of authority to the President in granting, withdrawing, suspending or limiting the duty-free treatment of eligible articles. In the course of the exercise of his authority the President has to take into account various considerations or make certain findings. It is well established that with respect to his exercise of discretion and the factual correctness of his underlying findings· there is no judicial review. *United States v. George S. Bush & Co., Inc.*, 310 U.S. 371, 60 S.Ct. 944, 84 L.Ed. 1259 (1940). Nevertheless, judicial review is available to determine whether the President's action was in conformity with the law. This includes such questions as whether he acted within his authority, whether he acted with a correct understanding of the language of the law, and whether he acted in conformity with its procedures.

In this case, the Court does not examine the President's action in terms of his authority under § 2464(a) because he did not specifically refer to that provision. This is not simply a glorification of a technical recitation of authority. The two sources of authority available to the President differ completely in substance and procedure. The exercise of power under § 2464(a) is a voluntary action by the President which requires the consideration of the diverse and delicate factors set out in 19 U.S.C. § 2461 and 2462(c).[6]

Subsection (c)(1)(B) does not apply with respect to any eligible article if a like or directly competitive article is not produced· on the date of enactment of this Act [enacted Jan. 3, 1975] in the United States.

    *    *    *    *    *    *

**6.** § 2461. *Authority to extend preference*

The President may provide duty-free treatment for any eligible article from any beneficiary developing country in accordance with the provisions of this title (19 U.S.C. § 2461 *et seq.;* amendments to 19 U.S.C. § 1202). In taking any such action, the President shall have due regard for—

■ The discretionary authority of § 2464(a) is not a source of authority which can be presumed to have been used in the face of a specific recitation of § 2464(c). The latter is a completely different species of authority. Under it, the President is *compelled* to act by reason of the occurrence of objectively measured events (in this case, the reaching of the 50 percent limit), unless he makes certain determinations described in § 2464(c)(1)(i), (ii) and (iii).[7] He must also take into consideration the provision in § 2464(d) exempting noncompetitive articles and make that determination.[8]

When the President recites § 2464(c) as the specific source of his action he is indicating that he acted under compulsion and therefore had to make a determination of whether any articles should be exempt from the force of that compulsion. It would be entirely presumptuous for the Court to take this specific recitation of authority and change it to an unspecified source of authority which indicates a wilful action by the President and presumes that a different and difficult set of considerations have been taken into account.

All this differs from those cases in which the President's acts and his supporting

findings and procedures are the same regardless of the authority relied on. In those events it may be possible for Courts to seek out alternative, unspecified sources of authority because the action of the President, as well as his findings and procedures, will remain the same. This important point distinguishes this case from those in which alternative sources of authority have been approved. See, for example, *United States v. Yoshida Int'l, Inc.*, 63 CCPA 15, C.A.D.1160; 526 F.2d 560 (1975).

This case is also distinguishable from the recent case of *Florsheim Shoe Company v. United States*, 6 CIT ——, 570 F.Supp. 734 (1983) (appeal pending) in which an action challenging the removal of articles from the G.S.P. was dismissed for failure to state a claim. In that action the President had relied on *both* § 2464(a) and § 2464(c), in which case the broad authority of the former was sufficient to cure any possible defect in the exercise of the latter authority. In fact, the use of both authorities has the appearance of unnecessary duplication because § 2464(a) alone is certainly sufficient to remove an eligible article. In any event, it hardly makes sense for this Court to presume in this case that the

(1) the effect such action will have on furthering the economic development of developing countries;
(2) the extent to which other major developed countries are undertaking a comparable effort to assist developing countries by granting generalized preferences with respect to imports of products of such countries; and
(3) the anticipated impact of such action on United States producers of like or directly competitive products.

§ 2462. *Beneficiary developing country*

\* \* \* \* \* \*

(c) *Factors determinative of whether to designate country as beneficiary developing country.* In determining whether to designate any country a beneficiary developing country under this section, the President shall take into account—
(1) an expression by such country of its desire to be so designated;
(2) the level of economic development of such country, including its per capita gross national product, the living standards of its inhabitants, and any other economic factors which he deems appropriate;

(3) whether or not the other major developed countries are extending generalized preferential tariff treatment to such country; and
(4) the extent to which such country has assured the United States it will provide equitable and reasonable access to the markets and basic commodity resources of such country.

7. See note 4 *supra*.

8. Here the Court indicates that the exemption in § 2464(d) is part of the Presidential determination. A complete exemption which is determined only in administrative or judicial proceedings after entry is simply incongruous and leaves the actions of the President affecting eligible articles too imprecise and too dependent on later events to be reasonably intended by Congress. Although separately stated, the Court sees the exemption expressed in § 2464(d) as a necessary part of the President's exercise of power in his administration of the G.S.P. From this it follows that the finding of whether or not articles are competitive is not a subject for trial. On this point plaintiff must accept the factual finding of the President if it is made with a correct understanding of the law.

President, without saying so, would use duplicative authority, particularly when its use involves alternative considerations and procedures.

Within § 2464(c) there is no dispute that the President acted pursuant to the 50 percent limit expressed in § 2464(c)(1)(B). This leads to the main question concerning the legal and procedural correctness of his action.

The dispute between the parties centers on the meaning of the word "articles" in the law of the G.S.P. The government argues that it always means "Tariff item" (which may encompass a multitude of separate products). The government's interpretation of the term as a tariff item number is not in dispute when it comes to granting duty-free treatment to "any eligible article" or determining whether "a quantity of any eligible article" has reached the 50 percent limit. This definition, however, cannot hold true when the law states that the 50 percent limit does not apply with respect to an "eligible article" if a competitive "article" is not produced in the United States. At that point it is impossible to think that the law is talking of tariff item numbers which contain disparate groups of products. It is clear and eminently reasonable that Congress did not want to have *individual* products removed from preferential treatment by means of the 50 percent limit if they were not competitive with American products.

■ The legislative history is not particularly helpful on this point. An interesting passage in the Senate Report on the Trade Reform Act of 1974 speaks of the term article as "in general" referring to tariff item numbers but goes on to mention the making of exceptions to insure "that an article is a coherent product category." [9] This is certainly not a justification for maintaining an equivalence between eligible articles and item numbers when it produces absurdities, as it would in § 2464(d). There is yet another statutory provision in which the concept of an "article" as an item number (containing disparate products) would not make sense. That provision is § 2463(b) which sets out the portions of the value of the eligible article which must be attributable to the eligible country in order for the "article" to obtain duty-free treatment.[10] In short, it is plain that the word "article" must take on such meaning as is reasonable and in accordance with legislative intention in the context of each separate provision. It necessarily follows that the term can mean different things in different parts of the G.S.P. law.

■ The extent to which "article" may mean other things elsewhere in the Act is not controlling here. In § 2464(d) it *must* mean an individual product. The identity of "article" and "item number" cannot be maintained when it comes to deciding whether or not articles were competing, unless, of course, an item number covers only one distinct product.

That was the situation in *Florsheim Shoe Co. v. United States, supra,* when, *inter alia,* buffalo leather from India was excluded from duty-free treatment under the G.S.P. In that event a single product, buffalo leather, was the entire content of a single item number (Item 121.55). Consequently, it could be presumed that, even though the exclusion was done by item

---

**9.** S.Rep. No. 93–1298, 93rd Cong. 2d Sess. pp. 223–226.

**10.** § 2463. *Eligible articles*

\*     \*     \*     \*     \*     \*

(b) *Eligible articles qualifying for duty-free treatment.* The duty-free treatment provided under section 501 (19 U.S.C. § 2461) with respect to any eligible article shall apply only—

(1) to an article which is imported directly from a beneficiary developing country into the customs territory of the United States; and

(2) If the sum of (A) the cost or value of the materials produced in the beneficiary developing country or any 2 or more countries which are members of the same association of countries which is treated as one country under section 502(a)(3) (19 U.S.C. § 2462(a)(3)), plus (B) the direct costs of processing operations performed in such beneficiary developing country or such member countries is not less than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States.

number, the President had found the single product involved was competitive with an American product and therefore, to the extent that it had reached the 50 percent limit, it could not remain on the G.S.P. by virtue of § 2464(d).

Here, with the exclusion of an item number containing on its face a variety of separate products, it is clear that a determination as to the competitive status of individual products was not made. Whatever may be the plasticity of the term "article" elsewhere in the administration of the G.S.P., it cannot justify or support an impossible comparison of competition either between tariff item numbers or disparate groups of products.

■ This holding by the Court constitutes a finding of procedural irregularity in the removal from eligibility of the Item in which the corn poppers were classified. The irregularity resulted from a misinterpretation of the term "article" as used in 19 U.S.C. § 2464(d). Aside from requiring the denial of defendant's motion to dismiss, the Court is of the opinion that the appropriate remedy for the defect it has found in the Presidential action is to remand for the purpose of allowing the correct procedures to be followed with respect to these corn poppers. However, since further steps consistent with classification under Item 684.20 would be pointless if plaintiff's claims for alternative classifications are correct, those alternative classifications must first be considered. Consequently, plaintiff must decide if it wishes to pursue its alternative claims. If it does, the Court will try the issues raised by those claims. If those are decided adversely to plaintiff, or if the plaintiff chooses not to proceed as to those claims, the case will be remanded so that the President may make findings under 19 U.S.C. § 2464(d) in conformity with this opinion.

It should be noted that those findings will not subsequently be judicially reviewable other than for their procedural regularity and conformity to the law.

For the reasons given above defendant's motion to dismiss is DENIED, and it is further

ORDERED that plaintiff shall notify the Court within 20 days of the date of entry of this Order of its intentions regarding its alternative claims.